AMERICAN HOME PRODUCTS CORPORATION, a corporation, Plaintiff in Error,

v.

Benny HOMSEY and Associates, doing business as American Mutual Company, Defendant in Error.

REVLON, INC., a corporation, Plaintiff in Error,

v.

AMERICAN MUTUAL COMPANY, an unincorporated Association, Defendant in Error.

Nos. 38958, 38968.

Supreme Court of Oklahoma.

April 18, 1961.

John G. Hervey and Hugh F. Owens, Oklahoma City, for plaintiff in error American Home Products Corp.

Granville Scanland, Oklahoma City, for plaintiff in error Revlon, Inc.

Miskovsky & Miskovsky, Oklahoma City, for defendants in error.

DAVISON, Justice.

Plaintiffs, American Home Products Corporation and Revlon, Inc., brought separate actions in the lower court to enjoin the defendants from selling certain products bearing the trademark, brand or name of the respective plaintiffs, below the prices set by the plaintiffs pursuant to the Oklahoma Fair Trade Act, 78 O.S.1951 § 41 et seq., Oklahoma Session Laws 1937, p. 479, Secs. 1 to 6. The defendants answered that the "nonsigner" provision of the Fair Trade Act violated the provisions of the Oklahoma Constitution and was unconstitutional.

The cases were consolidated for trial in the lower court and were presented on a stipulation of facts. It was stipulated, inter alia, that defendants were retail distributors of merchandise with one store and that plaintiffs were producers and sellers of products throughout the United States and in Oklahoma bearing their respective trademarks, brands and names and that these products were in fair and open competition with products of the same general class produced by others; that pursuant to the Fair Trade Act the plaintiffs had previously entered into written retail sales contracts with certain retailers in Oklahoma providing minimum retail sales prices as therein fixed or as fixed by any amendments thereof. It was also stipulated that defendants had not entered into any such contracts with plaintiffs, and with knowledge of said contractual prices, did sell the products of the plaintiffs, title to which was in defendants, at retail prices less than the prices fixed by the contracts with some other retailers and that such sales were not within any exceptions in the Act; and further, although not admitted by defendants as a fact, that witnesses of plaintiffs would testify that plaintiffs had and would suffer irreparable damage to their business, trademark and goodwill, because of defendants' acts.

It was further stipulated that the defendants had complied with the Oklahoma Unfair Sales Act, 15 O.S.1951 § 598.1 et seq., Oklahoma Session Laws 1949, p. 103, § 1 et seq., and that said Act was not an issue in the cases.

Under the issues and the stipulation there was presented to the trial court the sole question of whether the "nonsigner" provision of the Fair Trade Act violated certain provisions of the Oklahoma Constitution. (It is therefore unnecessary for us to discuss the Sherman Anti-Trust Act, the Miller-Tydings Act or the McGuire Act.) The trial court refused to enjoin the defendants and held the nonsigner provision of the Fair Trade Act unconstitutional and void as being (1) an improper delegation of legislative power of price fixing to private persons in violation of Art. 4, Sec. 1, and Art. 5, Sec. 1, and (2) in violation of the due process provisions (Art. 2, Secs. 2 and 7), in that there was no real and substantial relation between the price fixing provisions as applied to nonsigners and prevention of injury to the economic, social and moral well-being of the state.

The plaintiffs perfected separate appeals and the cases are consolidated for opinion by this court.

Title 78 O.S.1951 § 41, of the Fair Trade Act authorized vertical minimum price fixing contracts concerning commodities bearing the trademark, brand or name of the producer or owner of the commodity and provides in part as follows:

> "No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Oklahoma by reason of any of the following provisions which may be contained in such contract:
>
> "First: That the buyer will not resell such commodity below a minimum price stipulated by the vendor.
>
> "Second: That the vendee or producer require in delivery to whom he

may resell such commodity to agree that he will not, in turn, resell below a minimum price stipulated by such vendor or by such vendee."

It was pursuant to this portion of the Act that plaintiffs made the price fixing contracts with certain retailers other than the defendants. The validity of these contracts is not questioned here. The plaintiffs contend that defendants are bound by the nonsigner provisions of the Act. This is Sec. 44 of the Act and is in part:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the minimum price stipulated in any contract entered into pursuant to the provisions of Section 1 of this Act, whether the person so advertising, offering for sale, or selling is or is not a party to such contract is unfair competition and is actionable at the suit of any person damaged thereby."

Under this section the plaintiffs by making a contract with one or more retailers in the state may establish a retail price binding upon all nonsigning retailers in the state having notice thereof, regardless of their wishes in the matter. This is the very heart of the effectiveness of the Fair Trade Act because if the nonsigner portion of the Act is unenforceable then nonsigner retailers may compete with all retailers on a price basis. It is because of this method in fixing prices binding upon nonsigners that the Act is said to be unconstitutional.

An extensive and comprehensive annotation concerning the validity of Fair Trade Laws appears in 60 A.L.R.2d 420. From examination of this annotation and of later decisions it appears that the states are about evenly divided on the question of the validity of these laws. Since May, 1951, fifteen state supreme courts have declared acts of this kind unconstitutional. The trend of later decisions is to hold such laws invalid as violative of one or more state constitutional provisions.

Under the provisions of the Oklahoma Fair Trade Act private individuals and concerns who produce or own a commodity bearing their trademark, brand or name are exempted from antitrust laws and by the creation of a single contract with a purchaser for resale or a retailer may impose on all nonsigners a minimum sales price. The nature, type or kind of commodity is not named or described and need not be clothed with a public interest. No public officer or official board has any say or participation in fixing the price and no investigation or report is required to be made by or to any such person or body. There is no provision for an official or court review of the fixed price for the protection of nonsigner or the consumer who represents the public. The law does not provide any standard or guide as to the amount or necessity of the price fixing.

The ostensible justification is to compel adherence to fixed prices so as to protect the trademark, name, brand and goodwill. Examination of the decisions and literature on the subject compels the conclusion that the real impact of the law is in the realm of price fixing. See Remington Arms Company v. G. E. M. of St. Louis, Inc., 257 Minn. 562, 102 N.W.2d 528.

In Nissen v. Andres, 178 Okl. 469, 63 P.2d 47, we held that generally, in the absence of a legal or contractual duty, the owner of goods may dictate the price at which he will sell them.

The Supreme Court of Kansas in discussing the Fair Trade Act in Quality Oil Co. v. E. I. du Pont de Nemours & Co., 182 Kan. 488, 496, 322 P.2d 731, 737, said:

" * * * The fixing of minimum prices is the exercise of legislative power since it prescribes a rule governing conduct for the future which is binding upon those who do not consent. * * *"

In Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 982, 119 A.L.R. 1471, we held the Barbers' Unfair Trade Practice Law valid as against the claim that there was an unlawful delegation of legislative power. We pointed out that the official Board created by the law was authorized to approve the minimum price agreements established by

organized barber groups, but that such approval should be given only after Board investigation and that the courts could still inquire into the question whether the Board's decisions were unreasonable, extravagant or arbitrary. Therein we stated:

> "It must be conceded that, if the section does confer such power on an unnamed, unofficial group, it is within the inhibition of the Constitution. It is also apparent that the act would be invalid if the agreement referred to were approved without investigation, or even if the agreement were considered as the sole evidence of the facts which the board is authorized to find, since no agreements of individuals could make facts exist which do not exist, so far as others and the public are concerned. Those agreeing could bind neither those not agreeing nor the patrons of the shops. * * *"

Obviously the Fair Trade Act does not possess any of the attributes of the Barber Law and falls within the category condemned in the above quotation.

The cited case of Remington Arms Company v. G. E. M. of St. Louis, Inc., 1960, 257 Minn. 562, 102 N.W.2d 528, 536, supra, is one of the later decisions holding the Fair Trade Act an unlawful delegation of legislative power. The decision is replete with citations supporting that court's conclusion. That court said:

> "Aside from the arguments pro and con as to the economic merits of the legislation, we are convinced that the reasons advanced for the grant of price-fixing power are not so compelling that we are forced to concede that the interests of the consumer are of so little importance that hearing and other safeguards may be dispensed with. * * *"

In Quality Oil Company v. E. I. du Pont de Nemours & Co., 182 Kan. 488, 322 P.2d 731, 732, supra, it was held:

> "The legislature is powerless to clothe a private person with power to fix minimum resale prices binding upon all who acquire and sell his trade-mark commodity with whom he has no direct contractual relation. An attempt to confer such power is an attempt to delegate legislative power, which is futile."

The Supreme Court of Oregon in General Electric Company v. Wahle, 1956, 296 P.2d 635, termed the nonsigner clause a flagrant violation of the constitutional provision respecting the delegation of legislative power.

In Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Brothers Giant Super Market, 1956, 231 La. 51, 90 So.2d 343, 348, 60 A.L.R.2d 410, the Louisiana Supreme Court considered the nonsigner clause from the standpoint of delegation of legislative power, and termed it "legislative delegation in its most obnoxious form."

See also Olin Mathieson Chemical Corporation v. Francis, 1956, 134 Colo. 160, 301 P.2d 139; Bissell Carpet Sweeper Co. v. Shane Co., 1957, 237 Ind. 316, 143 N.E.2d 415; McGraw Electric Co. v. Lewis & Smith Drug Co., 1955, 160 Neb. 301, 68 N.W.2d 608; Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 1958, 167 Ohio St. 182, 147 N.E.2d 481; and Liquor Store, Inc. v. Continental Distilling Corp., Fla. 1949, 40 So.2d 371.

■ It is our conclusion that the nonsigner provision of the Oklahoma Fair Trade Act is an unlawful delegation of legislative power and is unconstitutional and void.

We now turn to that part of the lower court's judgment holding the nonsigner clause violative of the due process provisions of the Oklahoma Constitution, Art. 2, Secs. 2 and 7. This involves the question of whether the legislation was a proper exercise of police power.

In Adwon v. Oklahoma Retail Grocers Ass'n, 204 Okl. 199, 228 P.2d 376, 377, we held:

> "The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only

to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they may be said to be merely arbitrary, capricious, and unreasonable, and hence irreconcilable with the conception of due process of law."

However, since there is no closed class or category of business affected with a public interest, the court in applying the due process sections of the Oklahoma Constitution, will determine in each case whether the circumstances are such as to justify the challenged legislation as a reasonable exertion of governmental authority or condemn it as unreasonable, arbitrary and discriminatory. Further the mere recital in the Act of the reasons for or conditions which gave rise to the enactment are not controlling on the courts so that they must declare that to be which palpably is not. Herrin v. Arnold, supra.

In 16 C.J.S. Constitutional Law § 195, pp. 940–944, it is stated:

"In order that a statute may be sustained as an exercise of the police power, the law must, in fact, be a police law, and the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals, or general welfare, that there is some clear, real, and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable, and appropriate manner tend toward the accomplishment of the object for which the power is exercised.

" * * * The police power must be exercised for public purposes only; the legislature may not exercise the police power for private purposes, or for the exclusive benefit of particular individuals or classes, * * *"

Under the Oklahoma Fair Trade Act nonsigners with notice are bound to a minimum resale price which may be fixed by a single contract. There is nothing to prevent this price being changed at any time by another contract and by simply notifying nonsigners. None, including the consumer public, has any voice in the matter except the parties to the price fixing contract. The retailer who by skill and energy has reduced his operation expense and may be satisfied with a smaller profit is regimented with the less efficient and less industrious seller of the same commodity. Most important the consumer public must pay this price and is deprived of the benefit of the free and competitive economy so important to the progress of this nation. This is true in the present case because it is not shown that the commodities involved herein for sale bear any reasonable relationship to the health, safety, morals or general welfare of the public. The act appears to be solely for private gain of particular individuals rather than for the benefit of the general public.

In the recent decision of Remington Arms Company v. Skaggs, 1959, 55 Wash.2d 1, 345 P.2d 1085, the court held the nonsigner clause of the Fair Trade Act of Washington invalid as an improper exercise of police power and overruled its prior decision (Sears v. Western Thrift Stores of Olympia, 10 Wash.2d 372, 116 P.2d 756). This decision cites and quotes from the later opinions from other states and concludes the Act constitutes improper use of the police power in that it bore no reasonable relation to the health, safety, morals, or general welfare of the public.

The Supreme Court of Oregon in General Electric Co. v. Wahle, 1956, supra, characterized the Act of that state as follows:

"* * * it is obvious that the whole scheme of the Fair Trade Acts is one for private, rather than public, gain, a scheme fathered by highly organized groups of distributors and retailers, interested not in the public weal, but only in their own selfish ends. Manifestly, such a scheme bears no relation

whatever to the public morals, health, safety, or general welfare." [296 P.2d 645]

In Skaggs Drug Center v. General Electric Co., 1957, 63 N.M. 215, 315 P.2d 967, the court determined the nonsigner clause unconstitutional and void as an arbitrary and unreasonable exercise of police power and in arriving at this conclusion stated 315 P.2d at page 974:

"* * * In substance, therefore, what is the real purpose of the Fair Trade Act? No matter what high-sounding terms are used, such as 'free and open competition', 'unfair competition,' and 'protection of good will', it is a matter of common knowledge that it is a price-fixing statute, designed primarily to destroy competition at the retail level. The high-sounding phrases used with respect to the trade-mark owners are simply excuses and not a reason for the law."

The Supreme Court of Arkansas in Union Carbide & Carbon Corp. v. White River Distributors, 1955, 224 Ark. 558, 275 S.W. 2d 455, 461, held the nonsigner clause unconstitutional and not protective of the public welfare and in violation of the due process clause of the state constitution. In its decision that court stated:

"* * * It is a generalization, but not an overstatement, to say that the effort to 'fix prices' is made by groups who desire to sell something for more than the sponsoring group believes that the purchasing public would pay for that 'something' without an enforced fixed price. It would seem apparent that the principal objective of minimum price maintenance is the protection of profit margins for retailers and distributors unable or unwilling to meet the pressure of competition.

\* \* \* \* \* \*

"* * * Nobody doubts the feasibility of appellant acquiring one contract dealer out of the hundreds of retail dealers in the state, or the feasibility of bringing this information to all other dealers. If securing a contract with one dealer binds all others, then the corollary would be that, absent such contract, the others are not bound. It is frightful to think a devise so easily concocted could destroy the constitutional bulwark protecting our personal liberties and the public welfare."

In Olin Mathieson Chemical Corp. v. Francis, 1956, 134 Colo. 160, 301 P.2d 139, 147, supra, the court said with respect to exercise of police power:

"* * * To sustain the price-fixing power attempted by the General Assembly in the statute involved, under a claimed exercise of the police power, would be to place the power of the legislature above the constitution.

\* \* \* \* \* \*

"During a recent decade numerous attempts were made to regiment the general public and in each instance they were struck down as violative of constitutional rights of a free people. We have not yet arrived at the place in America where the many must yield to the few, so that the latter may make ever increasing profits at the expense of those who still believe in the principle of free and competitive trade and commerce, untrammeled by legislative fiats."

To the same general effect and conclusion see Rogers-Kent, Inc. v. General Electric Co., 1957, 231 S.C. 636, 99 S.E.2d 665; Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., 1952, 334 Mich. 109, 54 N.W.2d 268; Liquor Store, Inc. v. Continental Distilling Corp., Fla.1949, 40 So.2d 371, supra; McGraw Electric Co. v. Lewis & Smith Drug Co., 1955, 160 Neb. 301, 68 N.W.2d 608, supra; Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 1958, 167 Ohio St. 182, 147 N.E.2d 481, supra; and Grayson-Robinson Stores, Inc. v. Oneida, Ltd., 1953, 209 Ga. 613, 75 S.E.2d 161.

■ We consider the cited authorities as conclusive that the nonsigner clause of the

Oklahoma Fair Trade Act is unreasonable, arbitrary and discriminatory and bears no relation to the public morals, health, safety, or general welfare and is irreconcilable with our conception of the due process provisions of the Oklahoma Constitution.

In arriving at the above conclusions we are aware that the courts of some states have given contrary decisions. We do not agree with these decisions. Furthermore our views and conclusions are supported by the majority of the later cases.

Both plaintiffs rely upon Gates v. Easter, Okl., 354 P.2d 438. That case involved the dairy industry which has long been recognized as being clothed with a public interest and directly affecting the safety, health and general welfare of the public and the facts in that case presented nothing to the contrary. It was an industry recognized as subject to reasonable regulation. We therefore recognized as applicable the rule that the Legislature is primarily the judge of the necessity of the enactment and that it was presumptively valid. The situations are not the same. The Fair Trade Act authorizes private persons to do that which would otherwise be unlawful and that is to fix prices. No particular industry or commodity is designated by the Act and they need not be clothed with a public interest within the meaning of police power. In such a situation and as stated in Herrin v. Arnold, supra, this court will determine the reasonableness of the exercise of governmental authority or condemn it as arbitrary and discriminatory. Under the circumstances here presented we have determined the nonsigner clause to be unreasonable, arbitrary and discriminatory and violative of due process.

Plaintiffs contend the Act is valid because its stated purpose was to protect the trademarks owned by them. Since we have held the Act was in fact a price fixing scheme it would appear this amounts to no more than a mere excuse for the enactment rather than substantial grounds for its validity. See Remington Arms Company v. Skaggs, supra, and Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., supra.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., concurs in result.