In re the CERTIFICATION OF QUESTION OF STATE LAW.

M. J. KRUTSINGER, Appellant,

v.

MEAD FOODS, INC., et al., Appellees.

No. 50394.

Supreme Court of Oklahoma.

Feb. 1, 1977.

Frank Gregory, M. David Riggs, Chapel, Wilkinson, Riggs & Abney, Tulsa, for appellant.

Coleman H. Hayes, Oklahoma City, for appellee Mead Foods, Inc.

LAVENDER, Vice Chief Justice:

■ M. J. Krutsinger (Krutsinger) sought damages against Mead Foods, Inc.

(Mead) and others under the United States antitrust law in a United States District Court action brought in the Western District of Oklahoma. On sustaining a motion for summary judgment for Mead, an appeal was lodged. By opinion, the United States Court of Appeals for the Tenth Circuit remanded. That opinion, with a subsequent order, certified to this court a question of state law. The opinion frames the question simply as "(M)ust a Miller-Tydings–Fair Trade Act price maintenance contract be a formal written agreement under the law of Oklahoma?" We hold such a contract, and to be under 78 O.S.1971, § 41,[1] is not required to be a formal written agreement and could be oral.

This opinion is limited to the consideration of the Oklahoma Fair Trade Act. We are concerned with the narrow issue as to the form of contract required by § 41 of that Act. We do not consider or pass on any federal act, any issues determined by the Circuit Court of Appeals opinion, or on any other issue necessary for determination by the federal district court by reason of the remand.

Here, the Mead controversy is the only one involved. Mead manufactures and wholesales bakery products in the Oklahoma City–Lawton area. Mead was Krutsinger's supplier. Mead sought to maintain prices of primary and secondary label bread by an oral agreement as between Mead and Krutsinger. This oral form of the agreement produces the certification of law question to this court. Krutsinger charges

1. "§ 41. Contracts relating to sale or resale of commodities bearing trademarks or labels.— *No contract* relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Oklahoma by reason of any of the following provisions which may be contained in such contract:

"First: That the buyer will not resell such commodity *below a minimum price stipulated* by the vendor.

"Second: That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell below a minimum price stipulated by such vendor or by such vendee.

"Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases:

"First: In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

"Second: When goods are damaged or deteriorated in quality and notice is given to the public thereof.

"Third: By any officer acting under the orders of any court." (Emphasis added.)

Mead with an antitrust violation. Mead claims an immunity under federal statute. This claimed immunity requires the contract to qualify as one allowed as valid under the Oklahoma Fair Trade Act.

This court ordered briefs of the parties directed solely to the question of state law. Krutsinger argues a narrow application of § 41 so as to provide a limited antitrust exception. He argues that the fact the legislature went to great pains to specifically spell out what such a contract may provide and what may be implied in the contract that the court should find in the statute a requirement that such a contract be in writing.[2] Mead urges a requirement of a formal written contract is an unwarranted amendment of the actual language of § 41; and in Oklahoma all contracts may be oral unless expressly required by statute to be in writing: 15 O.S.1971, § 134.[3]

Section 41 does not dictate the necessity of a formal written contract. The statutory language used is "No contract * * *." This wordage coupled with 15 O.S.1971, § 134 allows a contract contemplated under § 41 as valid to be oral. A general rule of statutory construction is that all legislative enactments must be interpreted in accordance with their plain ordinary meaning according to the import of the language used. *Alfalfa Electric Coop., Inc. v. First Nat. B. & T. Co.,* Okl., 525 P.2d 644 (1974). There is no reason, here, to deviate from this general rule and modify the plain ordinary meaning of the words of "no contract" to "no *formal written* contract." Though allowed, an oral contract under § 41 is subject to defenses and difficulties of proof, including its specific terms, the same as other oral contracts.

This holding is not in disagreement with *American Home Products Corp. v. Homsey,*

Okl., 361 P.2d 297 (1961). There a contract allowed by § 41 was not the issue. Involved was the effect of that contract on one not a party to the contract. This difference in *American Home Products Corporation, supra,* was pointed to and stressed in the Circuit Court of Appeals opinion. In legal literature on fair trade acts, and in the *American Home* opinion, non-parties are generally called "non-signers." Section 44,[4] declared unconstitutional by *American Home,* did not include the word "non-signer". That section does not control or require an allowed contract under § 41 to be a formal written contract.

We, therefore, find it is not essential for a price maintenance contract, as allowed by the Oklahoma Fair Trade Act, to be a formal written agreement.

All of the Justices concur.

---

2. See n.1, supra.

3. § 134. "What contracts may be oral. All contracts may be oral, except such as are specially required by statute to be in writing."

4. "§ 44. Unfair competition.—Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the minimum

price stipulated in any contract entered into pursuant to the provisions of Section 1 of this Act, whether the person so advertising, offering for sale, or selling is or *is not a party to such contract* is unfair competition and is actionable at the suit of any person damaged thereby. * * *." (Emphasis added; footnote deleted.)