**Janice Y. BRANSTETTER, Petitioner,**

v.

**TRW/REDA PUMP, Own Risk, and the Workers' Compensation Court, Respondents.**

No. 70759.

Supreme Court of Oklahoma.

April 23, 1991.

Richard A. Bell, Norman, for petitioner.

Jo Anne Deaton, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for respondents.

SUMMERS, Justice:

The Workers' Compensation Act of Oklahoma requires that reports of physicians used as evidence be made in accordance with the latest Guides to the Evaluation of Permanent Impairment issued by the American Medical Association.[1] In this case the employer's examining doctor departed from those Guides, with the explanation that he did so because the claimant did not cooperate fully in the testing process. The trial judge denied benefits based on that report. The Court of Appeals reversed, holding that the doctor's reasons afforded an insufficient basis for departing from the Guides. Having granted certiorari, we now vacate the Court of Appeals opinion and remand to the Workers' Compensation Court for further proceedings.

Petitioner Branstetter alleged pulmonary injury due to her work at the manufacturing plant of respondent TRW/Reda Pump. At trial TRW admitted that Branstetter was employed there, but denied that she had suffered injury, or if she was injured, disagreed that the injury arose out of her employment with TRW.

Branstetter testified that her duties at the plant included working with chemicals whose fumes caused her to be unable to breathe. She stated that she had never

---

1. 85 O.S.Supp.1985 § 3(11).

smoked or had any respiratory trouble prior to her employment there. She also introduced the report of Dr. C, which stated that she suffered from respiratory impairment and damage to the lungs. In his opinion, she had partial permanent impairment to the body as a whole of thirty-five percent (35%).

The employer introduced a physician's report from Dr. F, which stated that in his opinion Branstetter was not disabled. The pulmonary function testing performed under Dr. F's direction was, in his judgment, inconclusive. The computer-generated report of the FEV–1 test indicated severe obstructive lung defect, but contained a handwritten note by Dr. S, the pulmonary specialist who interpreted the tests, that "Inconsistent data suggests suboptimal performance." Dr. F's lengthy report concluded as follows:

> "I can find no evidence of lung disease on this woman at this time. It is noted that her chest x-ray is normal as it has been in the past. Her pulmonary function studies cannot be evaluated as this woman did not cooperate fully with this test and according to the test results and according to Dr. [S's] written interpretation, this woman was not trying on this test for unknown reasons.... These test results are not reliable and cannot be used in evaluation of this patient.
>
> .    .    .    .    .
>
> This report is in variance from the AMA Guides, as this woman did not cooperate with the pulmonary functions studies and therefore the guides cannot be applied to this particular test."

The Workers' Compensation Court found in favor of the employer, and Branstetter appealed. The Court of Appeals reversed the order of the Workers' Compensation Court, holding that Dr. F's report was not competent because it deviated from the A.M.A. Guides, and that the subjective assessment of the doctor that she "was not trying on the test" was an insufficient reason for deviating from the Guides. Thus,

under the ruling of *Perlinger v. J.C. Rogers Constr. Co.,* 753 P.2d 905 (Okla.1988), the Workers' Compensation Court was directed to enter judgment in favor of petitioner. We previously granted certiorari and hereby vacate the opinion of the Court of Appeals.

■ We must apply the laws that were in effect at the time of Branstetter's injury. *Lee Way Motor Freight v. Wilson,* 609 P.2d 777, 779 (Okla.1980). A workers' compensation claim is ruled by the "law in existence at the time of the injury and not by laws enacted thereafter." *Id.,* citing *Caswell v. Bird,* 160 Okl. 224, 16 P.2d 859 (1933). The last date of Branstetter's employment with TRW was November 18, 1985. Because she alleges an ongoing injury due to exposure to harmful fumes, we shall consider that date to be controlling, as it was the date of her last possible exposure.

Title 85 O.S.Supp.1985, § 3(11) became effective November 1, 1985, and is thus the law applicable to this case:

> ...Except as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest "Guides to the Evaluation of Permanent Impairment" adopted and published by the American Medical Association. *The examining physician shall not deviate from said guides except as may be specifically provided for in the guides.* These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment.... (emphasis added)

Also in effect at the time was Rule 20(i), Rules of the Workers' Compensation Court, which said:

> ....   *Whenever the physician deviates from the "Guides", the basis for his deviation shall be stated together with full medical explanation....* (emphasis added)

■ The Employer argues that in giving his medical explanation for deviating from

the Guides Dr. F complied with Rule 20(i). Branstetter argues that under Section 3(11) of the Statutes deviation may occur only as specifically allowed by the Guides. To the extent that the two conflict, the answer is simple; a court rule cannot contravene a constitutional statute. *Ogle v. Ogle*, 517 P.2d 797 (Okla.1973). The statute allows deviation from the Guides only as may be expressly provided for in the Guides, and does conflict with the rule that would allow deviation upon mere explanation. The statute must prevail. *Oklahoma County Sheriff v. Hunter*, 615 P.2d 1007 (Okla.1980); *Matter of Milton H.*, 614 P.2d 72 (Okla.1980); *Transok Pipe Line Co. v. Darks*, 515 P.2d 218 (Okla.1973). Thus the doctor's report can support a finding of no impairment only if the basis for deviation from the Guides appears *specifically* in the Guides.

We have just recently looked to the Guides for directions in such a case as this. *York v. Burgess–Norton Mfg. Co.*, 803 P.2d 697 (Okl.1990) involved a comparable pulmonary complaint, inconsistent spirometry (or pulmonary function) tests, and the conclusion of the same Dr. F that the claimant "either was not cooperating with this test or intentionally attempted to change the results to imitate lung disease." *Id.* at 701. Turning to the Guides, we concluded that in order to have rendered a report capable of supporting a finding of no impairment, the doctor stopped one test short. The Guides (2nd Edition at P. 97) clearly state that testing to measure estimated exercise capacity, known as the VO2, should be done when:

> "(4) the individual has not performed maximally or correctly in the spirometry or Dco tests." *York* at 701.

■ *York* is dispositive of today's case. Here again the doctor disregarded the inconsistent spirometry tests based upon his belief that the claimant wasn't trying. Here again he failed to follow-up with the VO2 estimated exercise capacity test required by the Guides when the "individual has not performed maximally or correctly in the spirometry...." As in *York*, we must here also find that the Employer's medical report is insufficient under the A.M.A. Guides to support the lower court's denial of benefits.

The opinion of the Court of Appeals is vacated. The case, having been tried prior to our ruling in *Gaines v. Sun Refinery*, 790 P.2d 1073 (Okl.1990) (which modified the earlier rule of *Perlinger, supra* on which the Court of Appeals relied), is hereby remanded to the Workers' Compensation Court for a new trial.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

KAUGER, J., concurs specially.

OPALA, C.J., concurs in result.

SIMMS, J., dissents.

KAUGER, Justice, concurring specially:

I write separately to emphasize that in those causes arising after the issuance of the mandate in *Gaines v. Sun Refining & Marketing*, 790 P.2d 1073, 1081 (Okla.1990), May 4, 1990, there will be no more "overs." This rule is necessary to preserve judicial economy, and to assure that there will be a meaningful end to litigation.

OPALA, Chief Justice, with whom KAUGER, Justice, joins, concurring in result.

The court holds that (a) the provisions of 85 O.S.Supp.1985 § 3(11) [1]—referred to as a "constitutional statute"—control over

---

**1.** The pertinent terms of 85 O.S.Supp.1985 § 3(11), the statute's version which applies to this case, provided:

"* * * Except as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association. *The examining physician shall not deviate from said guides except as may be specifically provided for in*

Rule 20(i), Workers' Compensation Court Rules, which is no longer in force,[2] and (b) the claim's denial must be vacated because the employer's physician, who had found the claimant to be free from respiratory impairment, failed to administer an additional test prescribed by the Guides[3] for uncooperative patients.[4] I accede to the latter part of today's pronouncement for the following reasons: a) the employer's physician-expert offered no *legal, medical or any other scientific* basis for deviating from the Guides, b) the unwarranted departure from Guide-prescribed standards saps the employer's report of its probative value and c) the court wisely remands the case for reexamination of all issues.[5]

As for the first part of the court's holding—that a constitutional statute super-

sedes a contrary court rule—I accept this norm as a correct exposition of the law *only in the abstract.* The terms of § 3(11) in force at the time critical to this cause provided that

"... any examining physician shall only evaluate impairment in accordance with the latest [Guides] ... adopted and published by the American Medical Association. *The examining physician shall not deviate from said guides except as may be specifically provided for in the guides.* \* \* \*" (Emphasis added.)[6]

The quoted version of § 3(11) bound the physician to the AMA's standards unless a specific exception was found in the Guides. The operative terms of Rule 20(i),[7] on the other hand, *allowed* deviations as long as the physician gave a "full medical explana-

---

*the guides.* These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss...." (Emphasis added.)
Its current version, 85 O.S.Supp.1990 § 3(11), provides:
"\* \* \* Except as otherwise provided herein, *any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the incident for which compensation is sought.* However, revisions to the guides made by the American Medical Association which are published after January 1, 1989 shall be operative one hundred twenty (120) days after the last day of the month of publication. *The examining physician shall not follow the guides based on race or ethnic origin, but otherwise shall not deviate from said guides except as may be specifically provided for in the guides.* These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss...." (Emphasis added.)
2. The pertinent terms of Rule 20(i), Workers' Compensation Court Rules, 85 O.S.1981, Ch. 4, App., provided:
"\* \* \* Whenever the physician deviates from the 'Guides', *the basis for his deviation shall be stated together with full medical explanation....*" (Emphasis added.)
*This rule no longer exists. It appears to have been replaced by Rule 20(D),* Workers' Compen-

sation Court Rules, 85 O.S.Supp.1990, Ch. 4, App., whose terms provide:
"Except as provided in Rules 32 and 33, *all written medical reports* rating the extent of permanent impairment *shall be prepared in substantial compliance with the appropriate edition of the AMA Guides* as set forth in Rule 21." (Emphasis added.)

3. The term "Guides" refers to the American Medical Association's "Guides to the Evaluation of Permanent Impairment" whose second (1984) edition applies to this claim.

4. See *York v. Burgess–Norton Manufacturing Company,* Okl., 803 P.2d 697, 701 (1990), where the court vacated a claim's denial because the employer's physician failed to administer an additional Guide-prescribed test suited for patients whose efforts during the ventilatory function test were inadequate. See also *York v. Burgess–Norton Manufacturing Company, supra* at 703–704 (Opala, V.C.J., concurring).

5. This court has in numerous other cases remanded a claim for reexamination when the trial judge's decision rested on a flawed, yet curable medical report. See, e.g., *Wheat v. Heritage Manor,* Okl., 784 P.2d 74, 79 (1989); *Bill Hodges Truck Co. v. Gillum,* Okl., 774 P.2d 1063, 1069 (1989).

6. This version of § 3(11) was superseded by the 1990 amendment. See *supra* note 1.

7. For the pertinent terms of Rule 20(i) see *supra* note 2.

tion." *The real issue to be decided here is whether § 3(11) must in all cases override Rule 20(i).*

I would give here a far more qualified affirmative answer by holding that *in this case* the court rule will have to yield to the contrary text of the statute *whose constitutional validity has not been challenged.* A statute that is free from fundamental-law infirmity prevails over the contrary content of a rule which is not rested upon the promulgating court's constitutional authority.[8] There is no suggestion in this case that under the doctrine of *delegata potestas non potest delegari*[9] § 3(11) may in its present or former version constitute an unlawful delegation of the state's legislative power to a private entity (the AMA),[10] or that the AMA text's binding force may be vulnerable to challenge as an impermissible legislative predetermination of an adjudicatory scientific fact.[11] I would hence narrowly conclude that § 3(11) must control here over the contrary content of Rule 20(i) because the statute's validity has not been drawn in question.

SIMMS, Justice, dissenting:

I respectfully dissent from the majority's opinion for the reasons expressed in my dissenting opinions in *Gaines v. Sun Refining & Marketing,* 790 P.2d 1073, 1081 (Okla.1990), and *York v. Burgess–Norton Mfg., Co.,* 803 P.2d 697, 704 (Okla.1990). I would vacate the opinion of the Court of Appeals and sustain the Order of the Workers' Compensation Court.

---

**8.** See *Tweedy v. Oklahoma Bar Ass'n,* Okl., 624 P.2d 1049, 1052–1053 (1981); *Winters v. City of Oklahoma City,* 740 P.2d 724, 730 (1987) (Opala, J., concurring in part and dissenting in part); *State ex rel. Oklahoma Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 631 (1990) (Opala, V.C.J., dissenting).

**9.** *Delegata potestas non potest delegari* means that a delegated power cannot be redelegated. Black's Law Dictionary at 426 (6th ed.1990). See also *State ex rel. Oklahoma Bar Ass'n v. Perceful, supra* note 8 at 631 n. 6 (Opala, V.C.J., dissenting).

**10.** See *American Home Products Corporation v. Homsey,* Okl., 361 P.2d 297, 298 (1961) (the court's syllabus ¶ 3); *Associated Industries v. Industrial Welfare Com'n,* 185 Okl. 177, 90 P.2d 899, 904 (1939). In *Homsey* the court struck down as an unlawful delegation of legislative power the Oklahoma Fair Trade Act, 78 O.S. 1951 § 41 et seq., because "it delegate[d] to private persons the right to prescribe a rule governing conduct for the future which is binding upon those who do not consent." In *Associated Industries* the court noted the distinction between legislative power and the administra-

tive authority to promulgate rules for the law's execution. The former is nondelegable. It includes discretion in what the law shall be, while the latter, which is delegable, may only be exercised to carry out the law's policy and to apply it to various conditions.

See also generally, Annot.: Delegation of legislative power to nongovernmental agencies as regards prices, wages, and hours, 3 A.L.R.2d 188; Annot.: Validity of regulations as to plumbers and plumbing, 22 A.L.R.2d 816.

**11.** See Art. IV § 1, Okl. Const., *infra; Sterling Refining Co. v. Walker,* 165 Okl. 45, 25 P.2d 312, 318, 320 (1933).

The terms of Art. IV § 1, Okl. Const., provide: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, *and neither shall exercise the powers properly belonging to either of the others.*" (Emphasis added.)