COMBS, C.J.:
 

 ¶ 1 The question before this Court concerns whether evidence in the underlying workers compensation proceeding should have been excluded by the administrative law judge, as well as the constitutionality of several provisions of the Administrative Workers Compensation Act (AWCA), 85A O.S. §§ 1 - 125, that require mandatory use of the Sixth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides, Sixth Edition) to evaluate permanent partial disability (PPD). This Court determines the administrative law judge did not err by admitting the challenged evidence. This Court also determines the mandatory use of the AMA Guides, Sixth Edition, for assessing impairment for non-scheduled members does not violate the Constitution.
 

 I.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2 Petitioner Robert Hill (Hill) was a paramedic in the employ of Respondent American Medical Response (Employer), when he injured his right shoulder on September 22, 2014, while lifting a person of large body habitus. On November 7, 2014, Hill underwent surgery to repair a torn rotator cuff. After post-operative physical therapy, Hill was released on February 5, 2015, at maximum medical improvement and given permanent restrictions.
 

 ¶ 3 Hill timely filed a CC-Form-3 on February 11, 2015. Employer admitted the injury and benefits were provided pursuant to the provisions of the AWCA. Employer was apparently unable to accommodate Hill's permanent restrictions, and so Hill is no longer employed with American Medical Response. Per Hill's testimony, he found work with a new employer and is making approximately 25% less per annum.
 

 ¶ 4 On June 30, 2016, a hearing was held before Administrative Law Judge (ALJ) Tara A. Inhofe. The issue that concerns this appeal was Hill's request for an award of PPD benefits. Hill submitted a report by Dr. Stephen Wilson, who opined that Hill sustained 8% whole person impairment pursuant to the AMA Guides, Sixth Edition, and 31.8% impairment pursuant to the AMA Guides, Fifth Edition. Dr. Wilson did not express an opinion as to which rating more accurately described Hill's PPD. Employer's evaluating
 
 *1124
 
 physician, Dr. William Gillock, asserted in his own report that Hill sustained 4.2% whole person impairment pursuant to the AMA guides, Sixth Edition.
 

 ¶ 5 At the hearing, Hill attempted to exclude Dr. Gillock's report. Hill asserted: 1) that the report violated the requirements of
 
 Daubert v. Merrell Dow Pharms. Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993) ; and 2) the mandatory use of the AMA Guides, Sixth Edition, for assessing impairment for non-scheduled members violates the Oklahoma Constitution. The ALJ rejected Hill's arguments and determined that Hill sustained 7% whole person impairment, equal to an award of $7,913.50.
 

 ¶ 6 Hill appealed to the Workers' Compensation Commission (Commission), which affirmed the ALJ's decision on November 18, 2016. Hill filed a Petition for Review in this Court on November 28, 2016. Hill's appeal was retained by this Court on November 29, 2016. The Court held oral argument in this matter on March 19, 2018, and the cause was assigned to this office on March 28, 2018.
 

 II.
 

 STANDARD OF REVIEW
 

 ¶ 7 The law in effect at the time of the injury controls both the award of benefits and the appellate standard of review where workers' compensation is concerned.
 
 Corbeil v. Emricks Van & Storage
 
 ,
 
 2017 OK 71
 
 , ¶ 9,
 
 404 P.3d 856
 
 ;
 
 Brown v. Claims Mgmt. Res., Inc.
 
 ,
 
 2017 OK 13
 
 , ¶ 9,
 
 391 P.3d 111
 
 ;
 
 Williams Co., Inc. v. Dunkelgod
 
 ,
 
 2012 OK 96
 
 , ¶ 14,
 
 295 P.3d 1107
 
 . Hill's injury occurred on September 22, 2014. As Hills's injury occurred after the effective date of the AWCA, appellate review is governed by 85A O.S. Supp. 2013 § 78, which provides in pertinent part:
 

 C. The judgment, decision or award of the Commission shall be final and conclusive on all questions within its jurisdiction between the parties unless an action is commenced in the Supreme Court of this state to review the judgment, decision or award within twenty (20) days of being sent to the parties. Any judgment, decision or award made by an administrative law judge shall be stayed until all appeal rights have been waived or exhausted. The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:
 

 1. In violation of constitutional provisions;
 

 2. In excess of the statutory authority or jurisdiction of the Commission;
 

 3. Made on unlawful procedure;
 

 4. Affected by other error of law;
 

 5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
 

 6. Arbitrary or capricious;
 

 7. Procured by fraud; or
 

 8. Missing findings of fact on issues essential to the decision.
 

 ¶ 8 When considering the constitutionality of a statute, courts are guided by well-established principles and a heavy burden is placed upon those challenging the constitutionality of a legislative enactment.
 
 Lee v. Bueno
 
 ,
 
 2016 OK 97
 
 , ¶ 7,
 
 381 P.3d 736
 
 ;
 
 Douglas v. Cox Ret. Properties, Inc.
 
 ,
 
 2013 OK 37
 
 , ¶ 3,
 
 302 P.3d 789
 
 ;
 
 Thomas v. Henry
 
 ,
 
 2011 OK 53
 
 , ¶ 8,
 
 260 P.3d 1251
 
 . All presumptions are to be indulged in favor of a statute's constitutionality.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 7,
 
 381 P.3d 736
 
 ;
 
 Douglas
 
 ,
 
 2013 OK 37
 
 at ¶ 3,
 
 302 P.3d 789
 
 ;
 
 Thomas
 
 ,
 
 2011 OK 53
 
 at ¶ 8,
 
 260 P.3d 1251
 
 . A legislative act is presumed to be constitutional and will be upheld by this Court unless it is clearly, palpably and plainly inconsistent with the Constitution.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 7,
 
 381 P.3d 736
 
 ;
 
 Rural Water Sewer and Solid Waste Mgmt. v. City of Guthrie
 
 ,
 
 2010 OK 51
 
 , ¶ 15,
 
 253 P.3d 38
 
 ;
 
 Kimery v. Public Serv. Co. of Okla.
 
 ,
 
 1980 OK 187
 
 , ¶ 6,
 
 622 P.2d 1066
 
 .
 

 ¶ 9 We have previously explained that this Court's examination of a statute's constitutional validity does not extend to policy:
 

 The nature of this Court's inquiry is limited to constitutional validity, not policy. It is not the place of this Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition.
 
 Douglas
 
 ,
 
 2013 OK 37
 
 , ¶ 3 [
 
 302 P.3d 789
 
 ] ;
 

 *1125
 

 In re Assessments for Year 2005 of Certain Real Property Owned by Askins Properties, L.L.C.
 
 ,
 
 2007 OK 25
 
 , ¶ 12,
 
 161 P.3d 303
 
 ;
 
 Fent [v. Oklahoma Capitol Imp. Authority]
 
 ,
 
 1999 OK 64
 
 , ¶ 4 [
 
 984 P.2d 200
 
 ]. A court's function, when the constitutionality of a statute is put at issue, is limited to a determination of the validity or invalidity of the legislative provision and a court's function extends no farther in our system of government.
 
 Douglas
 
 ,
 
 2013 OK 37
 
 , ¶ 3 [
 
 302 P.3d 789
 
 ] ;
 
 Edmondson v. Pearce
 
 ,
 
 2004 OK 23
 
 , ¶ 17,
 
 91 P.3d 605
 
 ;
 
 Fent
 
 ,
 
 1999 OK 64
 
 , ¶ 4 [
 
 984 P.2d 200
 
 ].
 

 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 8,
 
 381 P.3d 736
 
 .
 

 III.
 

 ANALYSIS
 

 A. The ALJ did not err by admitting the report of Employer's treating physician.
 

 ¶ 10 Hill first asserts that the report of Employer's expert, Dr. William Gillock, relying on the AMA Guides, Sixth Edition, is not relevant to establishing the nature and extent of Hill's permanent partial disability, and thus violates the standards of
 
 Daubert v. Merrell Dow Pharms. Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993). As this Court noted in
 
 Christian v. Gray
 
 ,
 
 2003 OK 10
 
 , ¶¶ 7-9,
 
 65 P.3d 591
 
 , the
 
 Daubert
 
 decision sets forth several criteria a trial judge must consider when determining the admissibility of expert testimony under Federal Rule of Evidence 702, 28 U.S.C.A. We explained:
 

 Daubert
 
 provided a list of factors for the trial judge to consider when determining the admissibility of evidence. They include: 1. Can the theory or technique be, or has it been, tested; 2. Has the theory or technique been subjected to peer review and publication; 3. Is there a "known or potential rate of error ... and the existence and maintenance of standards controlling the technique's operation;" and 4. Is there widespread acceptance of the theory or technique within the relevant scientific community.
 
 Daubert
 
 ,
 
 509 U.S. at 593-594
 
 [
 
 113 S.Ct. 2786
 
 ]. The inquiry is a flexible one, and focuses on the evidentiary relevance and reliability underlying the proposed submission, and not on the conclusions they generate.
 
 Id
 
 .
 
 509 U.S. at 595
 
 [
 
 113 S.Ct. 2786
 
 ].
 

 The evidence must also "assist the trier of fact to understand the evidence or to determine a fact in issue." This requirement "goes primarily to relevance."
 
 Daubert
 
 ,
 
 509 U.S. at 591
 
 [
 
 113 S.Ct. 2786
 
 ]. Rule 702 thus "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
 
 Daubert
 
 ,
 
 509 U.S. at 592
 
 [
 
 113 S.Ct. 2786
 
 ].
 

 Christian,
 

 2003 OK 10
 
 , ¶¶ 8-9,
 
 65 P.3d 591
 
 .
 

 ¶ 11 Federal Rule of Evidence 702 was amended in direct response to
 
 Daubert
 
 and its progeny, and currently provides:
 

 A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
 

 (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
 

 (b) the testimony is based on sufficient facts or data;
 

 (c) the testimony is the product of reliable principles and methods; and
 

 (d) the expert has reliably applied the principles and methods to the facts of the case.
 

 Federal Rule of Evidence 702, 28 U.S.C.A. The requirements of Rule 702, and hence the
 
 Daubert
 
 standard, have been incorporated directly into the AWCA by the Legislature through 85A O.S. Supp. 2013 § 72(D), which provides:
 

 Expert testimony shall not be allowed unless it satisfies the requirements of Federal Rule of Evidence 702 with annotations and amendments.
 

 ¶ 12 Hill's
 
 Daubert
 
 argument is a definitional one based on relevance. Essentially, Hill argues that the opinion of Employer's expert Dr. William Gillock, relying on the AMA Guides, Sixth Edition, is not relevant to establishing the nature and extent of Hill's permanent partial disability because the AMA Guides, Sixth Edition, address impairment whereas the Commission, through its
 
 *1126
 
 ALJs, is charged with determining disability. Hill asserts that nowhere in the AWCA is there any mention of awarding impairment. Hill also notes that the AMA Guides, Sixth Edition, define "impairment" and "disability" as distinct terms.
 
 [1]
 
 Because the AWCA provides for awards of disability and not impairment, Hill argues, the AMA Guides, Sixth Edition, are wholly insufficient to provide a reasonable basis for evaluation of disability and are irrelevant to the Legislature's mandate to consider an injured worker's disability.
 

 ¶ 13 Hill's argument, however, is foreclosed by the language of the AWCA itself. The AWCA provides its own definitions that are controlling in this instance. Title 85A O.S. Supp. 2013 § 2(33) defines "permanent disability" and provides:
 

 "Permanent disability" means the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the current edition of the American Medical Association guides to the evaluation of impairment, if the impairment is contained therein;
 

 The language of this provision unambiguously defines "permanent disability" in a manner that aligns with the AMA Guides, Sixth Edition, definition of "impairment." Indeed, the Legislature's definition of permanent disability and the AMA Guides, Sixth Edition, definition of impairment both center on loss of bodily function as a result of an injury, not on activity limitations or loss of employment capacity. The AMA Guides themselves are incorporated directly into the definition of "permanent disability." The AWCA's definition of "permanent disability" is then incorporated into the definition of "permanent partial disability" in 85A O.S. Supp. 2013 § 2(34), which provides:
 

 "Permanent partial disability" means a
 
 permanent disability
 
 or loss of use after maximum medical improvement has been reached which prevents the injured employee, who has been released to return to work by the treating physician, from returning to his or her pre-injury or equivalent job. All evaluations of permanent partial disability must be supported by objective findings; (emphasis added).
 

 ¶ 14 The idea that the Legislature has chosen to base permanent partial disability primarily on the AMA Guides, Sixth Edition, impairment ratings is further supported by the language of 85A O.S. Supp. 2013 § 45(C), which provides in pertinent part:
 

 1. A permanent partial disability award or combination of awards granted an injured worker may not exceed a permanent partial disability rating of one hundred percent (100%) to any body part or to the body as a whole. The determination of permanent partial disability shall be the responsibility of the Commission through its administrative law judges. Any claim by an employee for compensation for permanent partial disability must be supported by competent medical testimony of a medical doctor, osteopathic physician, or chiropractor, and shall be supported by objective medical findings, as defined in this act. The opinion of the physician shall include employee's percentage of permanent partial disability and whether or not the disability is job-related and caused by the accidental injury or occupational disease.
 
 A physician's opinion of the nature and extent of permanent partial disability to parts of the body other than scheduled members must be based solely on criteria established by the current edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment".
 
 A copy of any written evaluation shall be sent to both parties within seven (7) days of issuance. Medical opinions addressing compensability and permanent disability must be stated within a
 
 *1127
 
 reasonable degree of medical certainty. Any party may submit the report of an evaluating physician. (Emphasis added).
 

 This equation of permanent partial disability with impairment is not a new concept in Workers' Compensation Law, including in Oklahoma. For example,
 
 Modern Workers Compensation
 
 explains:
 

 When permanent partial disability is defined in terms of loss of a body member, the definition approaches that of physical or mental impairment. A permanent impairment is any permanent anatomic or functional abnormality or loss.
 
 Indeed, in some states, permanent partial disability is equal to or the same as physical impairment.
 
 Or, a showing of physical impairment is prerequisite to an award for permanent partial disability. But in other states permanent impairment, while a basic consideration in the evaluation of permanent disability, and a contributing factor to the extent of permanent disability, is not necessarily an indication of the entire extent of permanent disability.
 

 2 Modern Workers Compensation § 200:9, Permanent Partial Disability, Generally (emphasis added).
 

 ¶ 15 The interlocking nature of impairment and permanent partial disability was apparent even under the old Oklahoma Workers' Compensation Act. It defined permanent partial disability in the following manner: "'Permanent partial disability' means permanent disability which is less than total and shall be equal to or the same as permanent impairment." Title 85 O.S. Supp. 2010 § 3(21),
 
 repealed by
 
 Laws 2011, SB 878, c. 318, § 87.
 

 ¶ 16 Hill, by asserting expert opinions concerning "permanent partial disability" must contain data in regard to educational background, vocational training, loss of wage-earning capacity, etc., is conflating the definition of "permanent partial disability" with that of "permanent total disability," which under both the AWCA and the now-repealed Oklahoma Workers' Compensation Act factored in employment capability.
 
 [2]
 

 ¶ 17 Hill relies on this Court's decision in
 
 Maxwell v. Sprint PCS
 
 ,
 
 2016 OK 41
 
 ,
 
 369 P.3d 1079
 
 , for the proposition that data on educational background, vocational training, work history, transferable skills, or loss of wage-earning capacity are necessary elements for any opinion on the nature and extent of permanent partial disability. However,
 
 Maxwell
 
 does not support this argument. This Court noted in
 
 Maxwell
 
 that:
 

 Since 1941, permanent partial disability compensation has been awarded
 
 solely on the basis of loss of function as established by medical evidence
 
 , and an injured employee's loss of earning capacity has been arbitrarily fixed by statute and a claimant has
 
 not
 
 been required to present evidence of loss of wage-earning capacity.
 

 2016 OK 41
 
 at ¶ 12,
 
 369 P.3d 1079
 
 .
 

 The
 
 Maxwell
 
 opinion implies that this situation could have changed due to new language in 85A O.S. Supp. 2013 § 2(34) because it incorporates an employee's inability to return to his or her pre injury or equivalent job into the definition of permanent partial disability.
 
 Maxwell
 
 ,
 
 2016 OK 41
 
 at ¶ 13,
 
 369 P.3d 1079
 
 . The Court's observations, however, were made in the context of 85A O.S. Supp 2013 § 45(C)(5), a deferral provision which unquestionably required an evaluation of whether an injured employee returned to his or her pre-injury or equivalent job. This Court struck that provision as unconstitutional in part because:
 

 *1128
 
 In actuality, despite the fact the Commission continues to presume that an employee's loss of earning capacity is measured by the degree of physical disability sustained and is arbitrarily fixed by statute, the monetary award based on the physical disability rating to the employee's body becomes
 
 meaningless
 
 once the employee returns to work. An injured employee who returns to work receives no compensation for the physical injury sustained and no compensation for a reduction in future earning capacity.
 

 Maxwell
 
 ,
 
 2016 OK 41
 
 at ¶ 27,
 
 369 P.3d 1079
 
 .
 

 Not only did this Court strike the deferral provisions of 85A O.S. Supp. 2013 § 45(C)(5), including the language "returns to his pre-injury or equivalent job," this Court also determined "[a]ny definitional provisions found in 85A O.S. Supp. 2013 § 2, as discussed herein, are invalid to the extent they are inconsistent with the views expressed today."
 
 Maxwell
 
 ,
 
 2016 OK 41
 
 at ¶ 31,
 
 369 P.3d 1079
 
 .
 

 ¶ 18 This Court determined in
 
 Maxwell
 
 that it was unacceptable for an employee to lose permanent partial disability benefits merely because they returned to their pre-injury or equivalent job.
 
 See
 

 2016 OK 41
 
 at ¶¶ 23-25,
 
 369 P.3d 1079
 
 . Therefore, any requirement in 85A O.S. Supp. 2013 § 2(34) that "permanent partial disability" be contingent on whether an employee returns to their pre-injury or equivalent job is also invalid. Accordingly, "permanent partial disability" as defined by 85A O.S. Supp. 2013 § 2(34) essentially means "permanent disability," which as discussed above is functionally equivalent to impairment as defined by the AMA Guides, Sixth Edition.
 
 [3]
 

 ¶ 19 Dr. Gillock's report was not irrelevant and inadmissible because it contained no data in regard to Hill's education background, vocational training, work history, transferrable skills, or loss of wage-earning capacity. Such information is not necessary for a determination of "permanent partial disability" pursuant to the provisions of the AWCA. The ALJ did not err by admitting the report into evidence.
 

 B. Mandatory use of the AMA Guides, Sixth Edition, is not an unconstitutional restraint upon the trier of fact nor an impermissible legislative predetermination of an adjudicatory scientific fact.
 

 ¶ 20 Hill also challenges the constitutionality of several provisions of the AWCA that mandate use of the AMA Guides. Hill first asserts that the mandatory use of the current edition of the AMA Guides under the AWCA is an unconstitutional restraint upon the administrative law judge who acts as the trier of fact in workers' compensation proceedings under the AWCA and further that such mandatory use constitutes a legislative predetermination of an adjudicatory scientific fact.
 

 ¶ 21 The separation-of-powers doctrine serves to halt any legislative intrusion upon the role of the judiciary as set out by the constitution. Okla. Const. art. 4, § 1 ;
 
 Yocum v. Greenbriar Nursing Home
 
 ,
 
 2005 OK 27
 
 , ¶ 13,
 
 130 P.3d 213
 
 ;
 
 Earl v. Tulsa County Dist. Ct.
 
 ,
 
 1979 OK 157
 
 , ¶ 6,
 
 606 P.2d 545
 
 . While the Legislature's responsibility is to make law, the judiciary is invested with an adjudicative function that requires it to hear and determine forensic disputes.
 
 Lee v. Bueno
 
 ,
 
 2016 OK 97
 
 , ¶ 40,
 
 381 P.3d 736
 
 ;
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶ 13,
 
 130 P.3d 213
 
 . The power to adjudicate is the power to determine questions of fact or law framed by a controversy and this power is exclusively a judicial power.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 40,
 
 381 P.3d 736
 
 ;
 
 Conaghan v. Riverfield Country Day School
 
 ,
 
 2007 OK 60
 
 , ¶ 20,
 
 163 P.3d 557
 
 ;
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶ 13,
 
 130 P.3d 213
 
 . Any legislative removal of the discretionary component of the adjudicative process is a usurpation of
 
 *1129
 
 the courts' freedom; a freedom that is essential to the judiciary's independence from the other branches of government.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 40,
 
 381 P.3d 736
 
 (citing
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶ 13,
 
 130 P.3d 213
 
 ).
 

 ¶ 22 Pursuant to the AWCA, ALJs undoubtedly act in an adjudicative capacity and therefore must be given the same freedom to determine questions of fact free from legislative interference. In
 
 Maxwell
 
 , we explained:
 

 [T]he AWCA orders the Commission, through its ALJs, "to hear and determine claims for compensation and to conduct hearings and investigations and to make such judgments, decisions, and determinations as may be required by any rule or judgment of the Commission." 85A O.S. Supp. 2013 § 22(D). By statutory directive, the ALJs undoubtedly act in an adjudicative capacity in the administrative workers' compensation system because adjudication includes "the authority to hear and determine forensic disputes."
 
 Yocum v. Greenbriar Nursing Home
 
 ,
 
 2005 OK 27
 
 , ¶ 13,
 
 130 P.3d 213
 
 , 220. "When an administrative board acts in an adjudicative capacity, it functions much like a court" and such proceedings are quasi-judicial in nature.
 

 2016 OK 41
 
 at ¶ 16,
 
 369 P.3d 1079
 
 (footnotes omitted).
 

 ¶ 23 Hill asserts that by prohibiting admission of any medical evidence that does not conform to the current edition of the AMA Guides, the Legislature has violated the above-stated principles and is encroaching into the domain of the trier of fact. In support of this assertion, Hill cites
 
 Yocum v. Greenbriar Nursing Home
 
 ,
 
 2005 OK 27
 
 ,
 
 130 P.3d 213
 
 and
 
 Conaghan v. Riverfield Country Day School
 
 ,
 
 2007 OK 60
 
 ,
 
 163 P.3d 557
 
 .
 

 ¶ 24 In
 
 Yocum
 
 , this court considered the independent medical examiner provisions of the old workers' compensation regime, found at
 
 85 O.S. 2001
 
 § 17(D) (
 
 repealed by
 
 Laws 2011, SB 878, c. 318, § 87). This Court concluded that the provisions in question
 
 did not
 
 assign a higher probative value to reports from independent medical examiners, and to have done so would have been constitutionally impermissible.
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶¶ 11-12,
 
 130 P.3d 213
 
 . The Court went on to explain:
 

 A legislative command to adjudicate a fact by a predetermined statutory direction would constitute an impermissible invasion into the realm of judicial independence. It encroaches upon the free exercise of decisionmaking powers reserved to the judiciary. Were the Legislature to require that the Workers' Compensation Court accord an elevated degree of probative value to an IME report its enactment would impermissibly
 
 rob that tribunal of its independent power to establish impairment or disability within the range of received competent evidence
 
 . The Legislature is confined to mandating what facts must be adjudged. It may neither predetermine adjudicative facts nor direct that their presence or absence be found from any proof before a tribunal.
 

 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶ 14,
 
 130 P.3d 213
 
 (footnotes omitted).
 

 ¶ 25 In
 
 Conaghan
 
 , this Court considered a different incarnation of the independent medical examiner provisions of the old workers' compensation regime, found at 85 O.S. Supp. 2005 § 17(A)(2). That provision provided in pertinent part:
 

 a. There shall be a rebuttable presumption in favor of the treating physician's opinions on the issue of temporary disability, permanent disability, causation, apportionment, rehabilitation or necessity of medical treatment. Any determination of the existence or extent of physical impairment shall be supported by objective medical evidence, as defined in Section 3 of this title.
 

 b. The Independent Medical Examiner shall be allowed to examine the claimant, receive any medical reports submitted by the parties and review all medical records of the claimant. If the Independent Medical Examiner determines that the opinion of the treating physician is supported by the objective medical evidence, the Independent Medical Examiner shall advise the Court of the same. If the Independent Medical Examiner determines that the opinion of the treating physician is not supported by objective medical evidence,
 
 *1130
 
 the Independent Medical Examiner shall advise the Court of the same and shall provide the Court with his or her own opinion. In cases in which an independent medical examiner is appointed, the Court shall not consider the opinion of the Independent Medical Examiner unless the Independent Medical Examiner determines that the opinion of the treating physician is not supported by objective medical evidence, in which case the Court shall follow the opinion of the Independent Medical Examiner, the opinion of the treating physician or establish its own opinion within the range of opinions of the treating physician and the Independent Medical Examiner.
 

 This Court upheld the rebuttable presumption in favor of the opinion of the treating physician as a valid procedural device under our settled law.
 
 Conaghan
 
 ,
 
 2007 OK 60
 
 at ¶ 21,
 
 163 P.3d 557
 
 .
 

 ¶ 26 However, the Court determined that part of 85 O.S. Supp. 2005 § 17(A)(2)(b) restricted both the evidence to be considered by the workers' compensation court and the fact-finding prerogative of that court. The final sentence of 85 O.S. Supp. 2005 § 17(A)(2)(b) required the Workers' Compensation Court to give determinative effect to opinion of the independent medical examiner and the treating physician,
 
 even when the treating physician's opinion was not supported by objective medical evidence
 
 . The Court determined that restriction impermissibly invaded the judiciary's exclusive constitutional prerogative of fact-finding.
 
 See
 

 Conaghan
 
 ,
 
 2007 OK 60
 
 at ¶ 22,
 
 163 P.3d 557
 
 .
 

 ¶ 27 A recent but important decision of this Court not discussed by Hill, however, is
 
 Lee v. Bueno
 
 ,
 
 2016 OK 97
 
 ,
 
 381 P.3d 736
 
 . In that case, this Court considered the constitutionality of
 
 12 O.S. 2011
 
 § 3009.1, a statute that serves to limit what types of evidence are admissible in certain civil cases involving personal injury. Specifically,
 
 12 O.S. 2011
 
 § 3009.1 limits admissibility of evidence of medical costs in personal injury cases to what has actually been paid or is owed for a party's medical treatment, rather than the amount billed for that treatment.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 9,
 
 381 P.3d 736
 
 . The petitioner in
 
 Lee
 
 asserted Section 3009.1 was unconstitutional as a violation of Okla. Const. art. 4, § 1, because it invaded the fact-finding function of the judiciary.
 
 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 39,
 
 381 P.3d 736
 
 .
 

 ¶ 28 This Court disagreed, and in doing so we stressed that rules of evidence are firmly the province of the Legislature:
 

 This Court has invalidated legislation for encroaching upon the adjudicative authority of the judiciary when it predetermines an adjudicative fact.
 
 See
 

 Conaghan
 
 ,
 
 2007 OK 60
 
 , ¶ 22 [
 
 163 P.3d 557
 
 ].
 
 However, the judiciary's constitutional prerogatives concerning fact-finding and adjudication should not be confused with the legislative prerogative to determine the rules of evidence
 
 , which this Court has directly recognized: "[a]s to legislative authority to declare rules of evidence, and that same are subject to modification or change is unquestioned, no person having a vested right in a rule of evidence."
 
 Polk v. Oklahoma Alcoholic Beverage Control Bd.
 
 ,
 
 1966 OK 224
 
 , ¶ 18,
 
 420 P.2d 520
 
 .
 

 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 41,
 
 381 P.3d 736
 
 (emphasis added).
 

 ¶ 29 When considered together, this Court's prior decisions support the following proposition: the Legislature is free to determine what evidence is and is not admissible in specific types of adjudicatory proceedings, but it may not afford elevated probative value to particular evidence nor give determinative effect to specific evidence or compel the conclusions to be drawn from it.
 
 See
 

 Lee
 
 ,
 
 2016 OK 97
 
 at ¶ 41,
 
 381 P.3d 736
 
 ;
 
 Conaghan
 
 ,
 
 2007 OK 60
 
 at ¶ 22,
 
 163 P.3d 557
 
 ;
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at ¶ 14,
 
 130 P.3d 213
 
 . The provisions of the AWCA that require use of the current edition of the AMA Guides serve to define both what constitutes admissible evidence on the issue of PPD: expert evidence that conforms to the AMA Guides, as well as to define what constitutes PPD.
 
 See
 
 85A O.S. Supp. 2013 § 2(31)(2)(b) ; 85A O.S. Supp. 2013 § 2(33) ; 85A O.S. Supp. 2013 § 45(C)(1).
 

 ¶ 30 Hill also asserts that mandatory use of the current edition of the AMA Guides is an impermissible legislative predetermination of an adjudicatory scientific fact. Hill cites this Court's decision in
 
 *1131
 

 Sterling Refining Co. et al. v. Walker et al.
 
 ,
 
 1933 OK 446
 
 ,
 
 165 Okla. 45
 
 ,
 
 25 P.2d 312
 
 . Hill's reliance on that case is misplaced. The Court in
 
 Sterling
 
 did not, as Hill suggests, consider "the legislature's granting to the Supreme Court itself the right to fix or determine 'profitable' prices of oil that a second entity, the Oklahoma Corporation Commission, would use to limit production in Oklahoma's oil and gas fields." Petitioner's Brief in Chief, p.18. Rather, the
 
 Sterling
 
 Court determined: 1) the Legislature could not vest administrative or legislative powers in the Court; and 2) the Corporation Commission could not, itself, fix the price of oil.
 
 Sterling
 
 ,
 
 1933 OK 446
 
 at ¶¶ 31-33, 39,
 
 165 Okla. 45
 
 ,
 
 25 P.2d 312
 
 . That rationale for the inability of the Corporation Commission to determine the price of oil rested not on it being an adjudicatory fact for the Court to determine, but rather on anti-monopolistic principles:
 

 Petitioners further contend that the act in question is also unconstitutional because it confers upon the Corporation Commission the authority to fix the price of oil, and they further assert that the orders promulgated by the Corporation Commission under the authority of this Conservation Act were for the purpose of establishing or regulating the price. It has been universally held that unless a business is so affected with a public interest in the sense that the regulation of the price thereof is essential to the protection of the public, it is beyond the authority of the state or of the nation to regulate the price of the commodity. Businesses warranting regulation by price-fixing are usually monopolistic in character.
 

 Sterling
 
 ,
 
 1933 OK 446
 
 at ¶ 31,
 
 165 Okla. 45
 
 ,
 
 25 P.2d 312
 
 .
 

 ¶ 31 Adjudicative facts are facts to which the law is applied in the process of adjudication.
 
 Kentucky Fried Chicken of McAlester v. Snell
 
 ,
 
 2014 OK 35
 
 , n.4,
 
 345 P.3d 351
 
 ;
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at n.32,
 
 130 P.3d 213
 
 ;
 
 State ex rel. Blankenship v. Freeman
 
 ,
 
 1968 OK 54
 
 , ¶ 65,
 
 440 P.2d 744
 
 . Adjudicative facts are facts about the parties and must be ascertained from formal proof.
 
 Snell
 
 ,
 
 2014 OK 35
 
 at n.4,
 
 345 P.3d 351
 
 ;
 
 Yocum
 
 ,
 
 2005 OK 27
 
 at n.32,
 
 130 P.3d 213
 
 ;
 
 Freeman
 
 ,
 
 1968 OK 54
 
 at ¶ 65,
 
 440 P.2d 744
 
 .
 

 ¶ 32 The provisions requiring use of the AMA Guides in the AWCA are not a legislative predetermination of the degree of any claimant's impairment or award of PPD. As the ALJ correctly noted, the trier of fact is free to adjudicate the degree of impairment within the range of competent medical reports submitted at trial. Though those reports must be in accordance with the AMA Guides, the AWCA does not predetermine the weight to be given to any particular medical report, and any party is able to submit a report of an evaluating physician for the trier of fact to consider. As discussed previously, the AMA Guide provisions in the AWCA concern what type of evidence the trier of fact may consider and define PPD. In this cause, the ALJ examined the competent evidence and determined Hill's impairment to be 7% of the whole person, which was on the higher end of the range supported by the evidence.
 

 C. Mandatory use of the current edition of the AMA Guides does not constitute an unlawful delegation of the state's legislative power.
 

 ¶ 33 Hill also asserts the provisions of the AWCA requiring the use of the current edition of the AMA Guides are unconstitutional because they constitute an unlawful delegation of legislative authority. The Oklahoma Constitution vests legislative authority in the Legislature alone. Okla. Const. art. 5 § 1 provides:
 

 The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.
 

 This legislative authority to determine law and policy is distinct from the power to make rules of a subordinate character to carry them out, and it cannot be delegated.
 

 *1132
 

 Associated Indus. of Okla. v. Indus. Welfare Com'n
 
 ,
 
 1939 OK 155
 
 , ¶ 16,
 
 185 Okla. 177
 
 ,
 
 90 P.2d 899
 
 .
 
 See
 

 Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge Num. 188 v. Bd. of County Com'rs of Tulsa County
 
 ,
 
 2000 OK 2
 
 , ¶ 9,
 
 995 P.2d 1124
 
 ;
 
 Isaacs v. Okla. City
 
 ,
 
 1966 OK 267
 
 , ¶¶ 10-11,
 
 437 P.2d 229
 
 . However, where a law does not actually delegate authority, there is no violation of the above-noted non-delegation doctrine.
 
 See
 

 Thomas v. Henry
 
 ,
 
 2011 OK 53
 
 , ¶¶ 12-20,
 
 260 P.3d 1251
 
 (holding a challenged statute did not delegate authority to the federal government merely by acknowledging federal power and the cooperation between the state and federal government).
 

 ¶ 34 First, none of the provisions requiring use of the current edition of the AMA Guides give the AMA the power to make law in Oklahoma. Nothing in Oklahoma law prevents the Oklahoma Legislature from adopting as its own a set of particular standards
 
 already in existence
 
 . In
 
 Oklahoma Coalition for Reproductive Justice v. Cline
 
 ,
 
 2016 OK 17
 
 , ¶¶ 12-21,
 
 368 P.3d 1278
 
 , this Court discussed the non-delegation doctrine and applied it to a statute that required certain abortion-inducing drugs be used only in accordance with a final printed label set by the Food and Drug Administration (FDA). This Court determined it was bound to, if possible, adopt an interpretation of the challenged statute that did not give the FDA authority to alter the law in Oklahoma by making future changes to the final printed label in question.
 
 Cline
 
 ,
 
 2016 OK 17
 
 at ¶ 16,
 
 368 P.3d 1278
 
 . This Court concluded that the challenged statute required only that usage of the drugs conform to the final printed label in existence at the time, and therefore did not delegate to the FDA any authority to determine the law in Oklahoma on an ongoing basis.
 
 Cline
 
 ,
 
 2016 OK 17
 
 at ¶ 21,
 
 368 P.3d 1278
 
 .
 

 ¶ 35 The
 
 Cline
 
 case illustrates the important distinction between the Legislature adopting a set of fixed standards as law vs. delegating legislative authority to another entity that might promulgate and change those standards on an ongoing basis. Cases where this Court has found violations of the non-delegation doctrine concern the latter category. For example, in
 
 City of Okla. City v. State ex rel. Okla. Dept. of Labor
 
 ,
 
 1995 OK 107
 
 ,
 
 918 P.2d 26
 
 , this Court determined that Oklahoma's Minimum Wages on Public Works Act, 40 O.S.1991, §§ 196.1 to 196.14, violated Article 4, Section 1 and Article 5, Section 1 of the Oklahoma Constitution by delegating "the power to determine prevailing wages to [the United States Department of Labor] without setting standards for the exercise of that determination."
 
 City of Okla. City
 
 ,
 
 1995 OK 107
 
 at ¶ 1,
 
 918 P.2d 26
 
 . The provisions required the Oklahoma Labor Commissioner to adopt the United States Department of Labor's prevailing wage on an on-going basis.
 
 City of Okla. City
 
 ,
 
 1995 OK 107
 
 at ¶ 9,
 
 918 P.2d 26
 
 . The act allowed the United States Department of Labor to change Oklahoma's prevailing wage law without legislative action.
 
 City of Okla. City
 
 ,
 
 1995 OK 107
 
 at ¶ 8,
 
 918 P.2d 26
 
 .
 

 ¶ 36 This Court also discussed two other prior cases in
 
 Cline
 
 supporting the above-noted principles. We explained:
 

 In
 
 In re Initiative Petition No. 366, State Question No. 689,
 

 2002 OK 21
 
 ,
 
 46 P.3d 123
 
 , this Court ruled an initiative petition unconstitutional before it was submitted to a vote of the people. The petition called for the State Board of Education and the State Board of Regents for Higher Education to promote principles, but failed to state any principles.
 
 Id.
 
 ¶ 16,
 
 46 P.3d at 128
 
 . Because the legislation failed to provide guidelines for implementing rules, the legislation was deemed to have improperly delegated the Legislature's authority by allowing agencies unfettered discretion to make law.
 
 Id.
 
 ¶ 18,
 
 46 P.3d at 129
 
 .
 

 Similarly to
 
 In re Initiative Petition No. 366,
 
 in
 
 Estep,
 
 this Court ruled that the Oklahoma Campaign Finance Act, in effect at the time, violated the non-delegation doctrine.
 
 1982 OK 106
 
 , ¶ 1,
 
 652 P.2d 271
 
 , 272. The act allowed the Campaign Commission unfettered discretion to promulgate rules without legislative standards for guidance.
 
 Id.
 
 ¶ 16,
 
 652 P.2d at 277
 
 .
 

 Cline
 
 ,
 
 2016 OK 17
 
 at ¶¶ 14-15,
 
 368 P.3d 1278
 
 .
 

 ¶ 37 The question thus becomes what do certain provisions of the AWCA mean when they reference the "current edition of the American Medical Association guides to the
 
 *1133
 
 evaluation of impairment?"
 
 [4]
 
 We must determine whether these provisions mean the edition of the AMA Guides in effect at the time of passage (in this case the Sixth Edition) or the Sixth Edition now, followed by whatever future editions of the AMA Guides may be adopted at a later date. If the latter is the case, then the provisions would be an unconstitutional delegation of legislative authority for the reasons discussed in
 
 Cline
 
 .
 

 ¶ 38 The Supreme Court of Pennsylvania recently considered this issue in
 
 Protz v. Workers' Comp. Appeal Bd. (Derry Area School Dist.
 
 ),
 
 639 Pa. 645
 
 ,
 
 161 A.3d 827
 
 (2017). The court explained:
 

 At the outset, it is important to clarify that the non-delegation doctrine does not prevent the General Assembly from adopting as its own a particular set of standards which already are in existence at the time of adoption. However, for the reasons we have explained, the non-delegation doctrine prohibits the General Assembly from incorporating, sight unseen, subsequent modifications to such standards without also providing adequate criteria to guide and restrain the exercise of the delegated authority.
 

 Protz
 
 ,
 
 161 A.3d at 838-39
 
 .
 

 The logic expressed above is the same as that supporting this Court's decision in
 
 Cline
 
 . However, the Supreme Court of Pennsylvania went on to determine that references to the "most recent edition" of the AMA Guides could be given no reasonable construction where the language could be understood to mean only the most recent edition when the General Assembly enacted the statute.
 
 Protz
 
 ,
 
 161 A.3d at 839
 
 . Rather, the court determined "most recent edition" could only mean the most recent edition at the time of examination, and therefore constituted an unconstitutional delegation of legislative authority.
 
 Protz
 
 ,
 
 161 A.3d at 839
 
 .
 

 ¶ 39 In contrast, the Supreme Court of North Dakota reached the opposite conclusion, holding that language requiring use of the "most current edition" of the AMA Guides referred to the most current edition of the guides in existence at the time of the statutes enactment, in order to avoid constitutional conflicts implicated by the non-delegation doctrine.
 
 McCabe v. North Dakota Workers Comp. Bureau
 
 ,
 
 1997 ND 145
 
 , ¶ 16,
 
 567 N.W.2d 201
 
 .
 

 ¶ 40 We are persuaded by the logic of
 
 McCabe
 
 and that of our own prior decisions such as
 
 Cline
 
 . In
 
 Cline
 
 this Court stressed that well-established principles illustrate the heavy burden on those challenging the constitutionality of a legislative enactment:
 

 We are guided by well-established principles in assessing the conformity of a challenged state statute to our fundamental law.
 
 Liddell v. Heavner,
 

 2008 OK 6
 
 , ¶ 16,
 
 180 P.3d 1191
 
 , 1199-1200. Our state constitution is a bulwark to which all statutes must yield. In reviewing a statute for conformity to Oklahoma's constitution, we begin with a presumption of constitutionality.
 

 Id.
 

 A statute will be upheld unless it is clearly, palpably, and plainly inconsistent with the Constitution.
 

 Id.
 

 The party challenging a statute's constitutionality has a heavy burden to establish that it is in excess of legislative power.
 

 Id.
 

 Bound by these rules, we must, if possible, construe H.B. 2684 as not allowing the FDA's decisions to change Oklahoma law; the means
 
 *1134
 
 of doing so is to apply H.B. 2684's restrictions only to Mifeprex, misoprostol, and methotrexate use in abortions, excluding ectopic pregnancies, according to the current Mifeprex FPL.
 

 Cline
 
 ,
 
 2016 OK 17
 
 at ¶ 16,
 
 368 P.3d 1278
 
 .
 

 In
 
 Calvey v. Daxon
 
 , we specifically noted:
 

 If there are two possible interpretations-one of which would hold the legislation unconstitutional, the construction must be applied which renders them constitutional. Unless a law is shown to be fraught with constitutional infirmities beyond a reasonable doubt, this Court is "bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision."
 

 2000 OK 17
 
 at ¶ 24,
 
 997 P.2d 164
 
 (quoting
 
 App. of Okla. Capitol Imp. Auth.
 
 ,
 
 1998 OK 25
 
 , ¶ 8,
 
 958 P.2d 759
 
 ).
 

 ¶ 41 The Legislature chose not to specify in the AWCA whether "most current edition" and "current edition" refer to the edition of the AMA Guides that is most current or current at the time of enactment, or at the time of a claimant's injury or examination. Both interpretations are reasonable given the language of the AWCA. Because the second interpretation would render the provisions requiring use of the AMA Guides an unconstitutional delegation of legislative authority, we are compelled to adopt the interpretation that "most current edition" and "current edition" refer to the current edition of the AMA Guides when the relevant provisions were enacted: the AMA Guides, Sixth Edition.
 

 ¶ 42 The Legislature has not delegated its own authority to the AMA, and further, it has not somehow re-delegated the adjudicatory authority it granted to the Workers' Compensation Commission. Title 85A O.S. Supp. 2013 § 45(C)(1) provides in pertinent part: "The determination of permanent partial disability shall be the responsibility of the Commission through its administrative law judges." The AMA has no role in the adjudicatory process to determine any individual claimant's PPD. Rather, as explained above, the Legislature has adopted a set of existing standards promulgated by the AMA with which evidentiary materials in workers' compensation proceedings must comply, which is well within its province to determine the rules of evidence.
 
 See
 

 Lee v. Bueno
 
 ,
 
 2016 OK 97
 
 at ¶ 41,
 
 381 P.3d 736
 
 ;
 
 Polk
 
 ,
 
 1966 OK 224
 
 at ¶ 18,
 
 420 P.2d 520
 
 .
 

 D. The provisions of the AWCA requiring use of the AMA Guides do not constitute a denial of due process.
 

 ¶ 43 Hill also asserts mandatory use of the AMA Guides in the determination of PPD constitutes a denial of due process in violation of Okla Const. art. 2, § 7
 
 [5]
 
 and U.S. Const. amend. XIV, § 1.
 
 [6]
 
 Hill's first argument is that he was denied procedural due process because the AMA guides completely control his PPD award and he should therefore have been entitled to cross-examine the authors of the AMA Guides, Sixth Edition. In determining whether an individual has been denied procedural due process we engage in a two step-inquiry: 1) whether the individual possessed a protected interest to which due process protection applies; and 2) whether the individual was afforded an appropriate level of process.
 
 In re Adoption of K.P.M.A.
 
 ,
 
 2014 OK 85
 
 , ¶ 17,
 
 341 P.3d 38
 
 ;
 
 Thompson v. State ex rel. Bd. of Trustees of Okla. Pub. Employees Ret. Sys.
 
 ,
 
 2011 OK 89
 
 , ¶ 16,
 
 264 P.3d 1251
 
 ;
 
 In re A.M.
 
 ,
 
 2000 OK 82
 
 , ¶ 7,
 
 13 P.3d 484
 
 .
 

 ¶ 44 Hill correctly cites
 
 Maxwell v. Sprint PCS
 
 ,
 
 2016 OK 41
 
 , ¶ 18,
 
 369 P.3d 1079
 
 , for the proposition his award of PPD vested in him a property interest worthy of the protections of due process. The first prong of the test is satisfied, and due process protections apply.
 
 See
 

 Maxwell
 
 ,
 
 2016 OK 41
 
 at ¶ 18,
 
 369 P.3d 1079
 
 ;
 
 In re Adoption of K.P.M.A.
 
 ,
 
 2014 OK 85
 
 at ¶ 17,
 
 341 P.3d 38
 
 .
 

 *1135
 
 ¶ 45 This Court must next determine whether Hill was afforded the appropriate level of process. The core elements of procedural due process are notice and an opportunity to be heard.
 
 Baby F. v. Okla. County Dist. Court
 
 ,
 
 2015 OK 24
 
 , ¶ 15,
 
 348 P.3d 1080
 
 ;
 
 In re Adoption of K.P.M.A.
 
 ,
 
 2014 OK 85
 
 at ¶ 33,
 
 341 P.3d 38
 
 ("Notice and opportunity lie at the heart of due process.");
 
 Booth v. McKnight
 
 ,
 
 2003 OK 49
 
 , ¶ 18,
 
 70 P.3d 855
 
 . At a general level, Hill does not assert he was denied either of these things. A hearing on the issue of PPD was held in this matter, and Hill was represented at the hearing. He received a PPD award of $7,913.50. However, Hill appears to argue he was denied a meaningful opportunity to be heard because he was unable to cross examine the authors of the AMA Guides, Sixth Edition.
 

 ¶ 46 A trial or hearing held where one is not given a reasonable opportunity to cross examine adverse witnesses is a denial of adequate due process.
 
 In re A.M.
 
 ,
 
 2000 OK 82
 
 , ¶ 9,
 
 13 P.3d 484
 
 ;
 
 Towne v. Hubbard
 
 ,
 
 2000 OK 30
 
 , ¶ 19,
 
 3 P.3d 154
 
 . However, the authors of the AMA Guides, Sixth Edition, were not witnesses at Hill's PPD hearing, adverse or otherwise. The authors of the AMA Guides, Sixth Editions, did not testify against Hill and there is no indication that Respondents sought to have them do so.
 

 ¶ 47 As required by 85A O.S. Supp. 2013 § 45, both parties presented competent medical testimony concerning the extent of Hill's PPD, and the ALJ made a decision based on the range of evidence presented. Hill was not denied an opportunity to challenge or rebut Dr. Gillock's report, and in fact made a
 
 Daubert
 
 challenge to it at trial. As discussed above, the Legislature has chosen to adopt the AMA Guides as the standard for any physician's opinion on the nature and extent of PPD, and incorporated the AMA Guides into the definition of "permanent disability" itself. Doubtless, the AMA Guides, Sixth Edition, have an effect on PPD awards, because expert witness testimony must conform to them. The Legislature has incorporated them into workers' compensation law. This does not, however, make the authors of the AMA Guides adverse witnesses. Hill's inability to cross examine the authors of the AMA Guides, Sixth Edition, did not amount to a denial of procedural due process.
 

 ¶ 48 Hill also argues that he was denied substantive due process. He asserts that mandatory use of the AMA Guides, Sixth Edition, is an arbitrarily-designed employer immunity that shifts the economic loss to an innocent injured employee. Beyond this assertion, Hill's argument is supported only by citation to this Court's opinion in
 
 Torres v. Seaboard Foods, LLC
 
 ,
 
 2016 OK 20
 
 ,
 
 373 P.3d 1057
 
 .
 

 ¶ 49 Substantive due process prohibits arbitrary government action and encompasses a general requirement that all government actions have a fair and reasonable impact on the life, liberty, or property of the person affected.
 
 Baby F.
 
 ,
 
 2015 OK 24
 
 at ¶ 16,
 
 348 P.3d 1080
 
 ;
 
 City of Edmond v. Wakefield
 
 ,
 
 1975 OK 96
 
 , ¶ 5,
 
 537 P.2d 1211
 
 . This Court has previously explained:
 

 The substantive component of the due process clause bars certain governmental action despite the adequacy of procedural protections provided.
 
 Nelson v. Nelson,
 

 1998 OK 10
 
 , n. 26,
 
 954 P.2d 1219
 
 ;
 
 Daniels v. Williams,
 

 474 U.S. 327
 
 , 332,
 
 106 S.Ct. 662
 
 ,
 
 88 L.Ed.2d 662
 
 (1986). In determining whether an action violates substantive rights, a balance must be struck between the right protected and the demands of society.
 
 Matter of Adoption of J.R.M.,
 

 1995 OK 79
 
 ,
 
 899 P.2d 1155
 
 ;
 
 Youngberg v. Romeo,
 

 457 U.S. 307
 
 , 320,
 
 102 S.Ct. 2452
 
 , 2460,
 
 73 L.Ed.2d 28
 
 (1982).
 

 Baby F.
 
 ,
 
 2015 OK 24
 
 at ¶ 16,
 
 348 P.3d 1080
 
 .
 

 ¶ 50 In
 
 Torres,
 
 this Court reiterated and applied the test used to determine whether economic legislation such as workers' compensation statutes offend the requirements of substantive due process.
 
 See
 

 2016 OK 20
 
 at ¶¶ 27-29,
 
 373 P.3d 1057
 
 . The Court noted that the analysis requires an adjudication of whether the legislation is rationally related to a legitimate government interest and if the challenged legislation reasonably advances that interest.
 
 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 27,
 
 373 P.3d 1057
 
 .
 
 See
 

 *1136
 

 Edmondson v. Pearce
 
 ,
 
 2004 OK 23
 
 , ¶ 35,
 
 91 P.3d 605
 
 .
 
 [7]
 

 ¶ 51 Concerning the first part of the test, we explained:
 

 There is little doubt that a state legislature may alter private contractual rights of employers and employees when it properly exercises its police power in creating a particular workers' compensation law, or that workers' compensation laws, by themselves, have been considered by courts as a legitimate State interest since the compensation laws were first created. In our case today, we do not repeat
 
 Lochner's
 
 error of
 
 improperly rejecting
 
 an articulated economic interest of the State. We accept for the purpose of the arguments made herein, respondent's articulated State interest as legitimate in this case,
 
 i.e.
 
 , the prevention of workers' compensation fraud and the decrease in an employer's costs as a result of legislative effort to prevent fraud.
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 30,
 
 373 P.3d 1057
 
 (footnotes omitted).
 

 Similarly, we accept the state interest articulated in this matter as legitimate: a desire to establish uniform standards for workers' compensation law that allows for less disparity in outcomes.
 

 ¶ 52 Hill makes no argument as to how this stated interested is illegitimate or as to how mandatory use of the AMA guides is arbitrary or fails to advance that interest, beyond citing a portion of
 
 Torres
 
 . In
 
 Torres
 
 , this Court declared unconstitutional a provision that prohibited employees from filing workers' compensation claims unless they had been continuously employed with that employer for at least 180 days.
 
 See
 

 2016 OK 20
 
 at ¶ 16,
 
 373 P.3d 1057
 
 ; 85A O.S. Supp. 2013 § 2(14). This Court determined the provision in question was both overinclusive and underinclusive as it related to the legitimate state interest of prohibiting fraud in workers' compensation claims. We explained:
 

 When considering the articulated purpose of preventing workers' compensation fraud
 
 , a statute creating a class of employees who are injured, in fact, with a cumulative trauma injury during the first 180 days of employment with their then current employer, and then they are conclusively placed within a class of employees who file fraudulent claims, that statutory placement is overinclusive by lumping together the innocent with the guilty. On the other hand, if one of the purposes of workers' compensation is to provide statutory compensation for employees actually suffering an injury arising out of the course and scope of employment; then the statute is underinclusive because it fails to include employees actually injured during the first 180 days of employment.
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 42,
 
 373 P.3d 1057
 
 (footnotes omitted).
 

 ¶ 53 The provisions of the OWCA requiring use of the AMA guides do not suffer from the same flaw. They ensure that all claimants seeking PPD are subject to the same standards when it comes to evaluation of their impairment. The provisions require every person claiming the same type of injury, specifically to non-scheduled body parts, to ensure their medical opinion testimony conforms to the AMA Guides, and requires the same of any medical testimony submitted by their employers. The AMA Guides directly serve the State's articulated interest in ensuring uniformity between injured employees with similar injuries. The provisions are not arbitrary and do not offend the substantive due process safeguards inherent in Okla Const. art. 2, § 7 and U.S. Const. amend. XIV, § 1.
 

 *1137
 

 E. Mandatory use of the AMA Guides as part of the process for determining PPD does not violate Okla. Const. art. 2, § 6.
 

 ¶ 54 Hill also asserts that he has been denied access to justice within the meaning of Okla. Const. art. 2, § 6. He argues because the ALJs are bound by law to use the AMA Guides, Sixth Edition, to determine an injured workers' disability, such disability has been prejudged by the Legislature and the AMA and such prejudgment is a denial of access to justice.
 

 ¶ 55 Hill cites no law in support of his assertion beyond
 
 Marbury v. Madison
 
 ,
 
 5 U.S. 137
 
 ,
 
 1 Cranch 137
 
 ,
 
 2 L.Ed. 60
 
 (1803) and the text of Okla. Const. art. 2, § 6 itself. Generally, assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent, without further research that they are well taken.
 
 James v. State Farm Mut. Auto Ins. Co.
 
 ,
 
 1991 OK 37
 
 , ¶ 23,
 
 810 P.2d 365
 
 ;
 
 Paris Bank of Texas v. Custer
 
 ,
 
 1984 OK 5
 
 , ¶ 31,
 
 681 P.2d 71
 
 . Effectively, Hill's argument is a restatement of his claims that mandatory use of the AMA Guides constitutes an impermissible predetermination of adjudicative facts. As explained above, that is not the case.
 

 ¶ 56 If this Court interprets Hill's assertion to be that he was denied meaningful access to courts to seek a remedy, then he has still failed to meet the burden required to show the AMA Guides requirements violate Okla. Const. art. 2, § 6. Hill received a hearing before the ALJ, presented evidence of his PPD, and received an award. He was not treated differently from any other claimant in the same position with regards to his ability to seek redress for his injury. In
 
 Lee
 
 this Court explained the purposes and boundaries of Okla. Const. art. 2, § 6, and that explanation is worth repeating here:
 

 [T]his Court has consistently ruled that Okla. Const. art. 2 § 6 operates as a mandate to the judiciary rather than a limitation on the Legislature.
 
 Lafalier v. Lead-Impacted Communities Relocation Assistance Trust
 
 ,
 
 2010 OK 48
 
 , ¶ 18,
 
 237 P.3d 181
 
 ;
 
 Rivas v. Parkland Manor
 
 ,
 
 2000 OK 68
 
 , ¶ 18,
 
 12 P.3d 452
 
 ;
 
 Rollings v. Thermodyne Industries, Inc.
 
 ,
 
 1996 OK 6
 
 , ¶ 9,
 
 910 P.2d 1030
 
 . "In other words, Section 6 was intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief."
 
 Rollings
 
 ,
 
 1996 OK 6
 
 , ¶ 9 [
 
 910 P.2d 1030
 
 ].
 

 2016 OK 97
 
 at ¶ 29,
 
 381 P.3d 736
 
 .
 

 ¶ 57 In
 
 Lee
 
 we concluded that the petitioner failed to meet the burden of showing the evidentiary provision in question violated Okla. Const. art. 2, § 6, because it did not deny any subclass of litigants the ability to seek redress for their claims. Much like the evidentiary provision discussed in
 
 Lee
 
 , the AMA Guides requirements do not arbitrarily prevent the filing of workers' compensation claims and they subject all similarly-situated claimants to the same evidentiary requirements to demonstrate PPD. Hill has failed to meet the burden required to demonstrate that the AMA Guides requirements violate Okla. Const. art. 2, § 6 and deny him an adequate remedy at law.
 

 F. The Grand Bargain
 

 ¶ 58 Lastly, Hill asserts that mandatory use of the AMA Guides, when combined with numerous other provisions of the AWCA, constitutes a violation of the grand bargain that forms the basis for workers' compensation law.
 
 [8]
 
 Hill notes this Court has already determined several provisions of the AWCA to be constitutionally repugnant. Hill also discusses several provisions of the AWCA that he argues re-introduce fault as a limit to compensability into what is supposed to be a no fault system, and therefore support
 
 *1138
 
 his assertions that the grand bargain is dead.
 
 [9]
 

 ¶ 59 The Court considered similar arguments about the AWCA in
 
 Torres
 
 ,
 
 supra
 
 . We explained:
 

 Public policies adopted by our Legislature one hundred years ago that were foundational for establishing workers' compensation laws, such as the historic Legislature's views on the grand bargain and economic-welfare shifting,
 
 do not control or limit the current Legislature's determination of public policy
 
 . It is a well-known principle of statutory
 
 and constitutional construction
 
 that one Legislature cannot bind another, and this Court has followed this principle for several decades. Courts recognize that a legislature has the power to change the common law "to reflect a change of time and circumstances." While the English common law may be a starting point for a legal analysis, statutory law may modify the common law. The old hand that was at the legislative helm a hundred years ago does
 
 not
 
 control the present Legislature's view of good public policy.
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 51,
 
 373 P.3d 1057
 
 (footnotes omitted).
 

 The Court reached the conclusion that discussion of the grand bargain was important in the sense it formed the beginning of an analysis of what was or was not a current and legitimate state interest in the context of addressing
 
 specific constitutional claims
 
 .
 
 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 52,
 
 373 P.3d 1057
 
 .
 

 ¶ 60 Hill makes no argument, beyond a single assertion, concerning how the grand bargain is affected by the provisions of the AWCA requiring use of the AMA Guides. The numerous provisions cited by Hill in his discussion of the grand bargain are not implicated in this cause.
 
 [10]
 
 Hill has raised, and this Court has addressed, specific legal arguments concerning the constitutionality of the provisions of the AWCA requiring mandatory use of the AMA Guides. "[I]nvocation of a constitutionally deficient grand bargain in the current Oklahoma statutes is a hypothetical question" that in this cause, as in
 
 Torres
 
 , is not linked to any legal argument raised by Hill that affects his rights.
 
 2016 OK 20
 
 at ¶ 51,
 
 373 P.3d 1057
 
 .
 

 ¶ 61 What Hill's arguments, including those concerning the grand bargain, amount to is a claim that his award of PPD is insufficient. Hill, like others before him, argues that the workers of Oklahoma have been betrayed by a Legislature that has gradually eroded the deal that convinced Oklahoma's early industrial workforce to give up their right to seek redress in the courts via tort law. There is a ring of truth to this. From the evidence in the record before us, there is no doubt that use of the AMA Guides, Sixth Edition, resulted in a lower impairment rating for Hill's injury than what he would have received under the previously-used Fifth Edition of the AMA Guides. The ALJ awarded Hill PPD for 7% of the whole person totaling $7,913.50. Had the ALJ not been compelled to consider only evidence based upon the AMA Guides, Sixth Edition, she could have awarded PPD up to 31.8% of the whole person, for a total of $35,949. That is a $28,035.50 discrepancy.
 
 See
 
 Order Awarding Permanent Partial Disability Benefits, r. 60; Comparison of Benefits, r. 204; Petitioner's Brief in Chief, p. 5.
 

 ¶ 62 This Court is not indifferent to the frustration and hardship brought about by the gradual erosion of the grand bargain as the Legislature has exercised its power to
 
 *1139
 
 determine the policy of Oklahoma. Writing separately in
 
 Torres
 
 , Justice Colbert noted:
 

 [T]he [grand bargain] strikes a balance between the rights and duties of Oklahoma employers and employees. But with the enactment of the Administrative Workers' Compensation Act (AWCA), the balance is now off kilter and has become one-sided to the benefit of the employer.
 

 2016 OK 20
 
 at ¶ 4,
 
 373 P.3d 1057
 
 (concurring specially).
 

 Also writing separately, I noted:
 

 The grand bargain is not merely the starting point for an analysis to inform the court of what may or may not be legitimate state interests, but the cornerstone of the entire workers' compensation system's legitimacy.
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 7,
 
 373 P.3d 1057
 
 (concurring specially).
 

 ¶ 63 However, this Court's extant caselaw is clear: the proper forum for challenging the sufficiency of workers' compensation awards and the policy choices underlying the grand bargain is before the Legislature, not this Court.
 
 See
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 51,
 
 373 P.3d 1057
 
 ;
 
 Rivas v. Parkland Manor
 
 ,
 
 2000 OK 68
 
 , ¶ 15,
 
 12 P.3d 452
 
 (holding that while an award may seem inadequate, this Court cannot interfere with the wisdom or policy of legislation);
 
 Hughes Drilling Co. v. Crawford
 
 ,
 
 1985 OK 16
 
 , ¶ 21,
 
 697 P.2d 525
 
 (Holding the amount of recovery for wrongful death under the workers' compensation statutes was the province of the Legislature, and if it is too small the people have the power, either through elected officials or by right of initiative petition, to increase it).
 

 IV. CONCLUSION
 

 ¶ 64 The ALJ did not err by allowing the report of Employer's physician, Dr. Gillock, into evidence. The mandatory use of the AMA Guides, Sixth Edition, for assessing impairment for non-scheduled members does not violate the Constitution. The significant discrepancy of $28,035.50 in the dollar award for the disability resulting from Mr. Hill's job-related injury using the AMA Guides, Fifth Edition and the dollar award for the same disability under the AMA Guides, Sixth Edition is a direct consequence of the Legislature's adoption of the AMA Guides, Sixth Edition. Hill's claims concerning the ongoing destruction of the grand bargain and the increasing insufficiency of workers' compensation awards are arguments about policy best brought before the Oklahoma Legislature. The order of the Workers' Compensation Commission is affirmed.
 

 ORDER OF THE WORKERS' COMPENSATION COMMISSION AFFIRMED
 

 CONCUR: COMBS, C.J., WINCHESTER, DARBY, JJ., GOREE, S.J., and MITCHELL, S.J.
 

 CONCUR IN PART; DISSENT IN PART: KAUGER, J. (by separate writing).
 

 DISSENT: GURICH, V.C.J. (by separate writing), EDMONDSON, and REIF, JJ.
 

 RECUSED: COLBERT and WYRICK, JJ.
 

 KAUGER, J., concurring in part/dissenting in part:
 

 While I do not disagree with much of the majority's analysis of the issues, it appears to me that a decision on the merits is premature. Even if the Legislature intended for the Sixth Edition of the American Medical Association (AMA) Guides to be used when it used the term "current edition," the Legislature also carefully, and meticulously, set forth a procedure for the Workers' Compensation Physician Advisory Committee (PAC) to hold a public hearing to review the AMA Guides, and determine methods of deviations from them, if any.
 

 In 2011, the Oklahoma Legislature substantially revised the statutes relating to Workers' Compensation. The Legislature subsequently replaced the Workers' Compensation Act (the Act) with the new Workers' Compensation Code (the Code), both by adding new provisions and by repealing and renumbering statutory provisions found in the previous Act. Title 85A O.S. Supp. 2014 § 17 continues the existence of the nine member Physicians Advisory Council to the Workers' Compensation Commission. It provides that the PAC
 
 shall
 
 :
 

 *1140
 
 ... 3.
 
 After public hearing,
 
 review and make recommendations for acceptable deviations from the American Medical Association's "Guides to the Evaluation of Permanent Impairment";
 

 4.
 
 After public hearing
 
 , adopt Physician Advisory Committee Guidelines (PACG) and protocols for only medical treatment not addressed by the latest edition of the Official Disability Guidelines;
 

 5.
 
 After public hearing
 
 , adopt Physician Advisory Committee Guidelines for the prescription and dispensing of any controlled substance included in Schedule II of the Uniform Controlled Dangerous Substances Act if not addressed by the current edition of the Official Disability Guidelines; ... [Emphasis supplied]
 

 Section 17 also requires:
 

 "E. Meetings of the Physician Advisory Committee shall be called by the Commission but held at least quarterly. The presence of a majority of the members shall constitute a quorum. No action shall be taken by the Physician Advisory Committee without the affirmative vote of at least a majority of the members.
 
 [1]
 

 At oral argument, the Workers' Compensation Commission conceded that the Physician Advisory Committee (PAC) has not held a public hearing on this issue since the adoption of 85A in 2013. Although the mandatory "shall" is utilized to require a public hearing, after the adoption of the Workers' Compensation Code, there is nothing in the record to show any such hearing has been held regarding the 6th Edition since 2009. It does show that a public hearing was held on January 9, 2009,
 
 [2]
 
 wherein the PAC unanimously rejected the 6th Edition and voted to continue to use the 5th Edition.
 

 Without the condition precedent of calling and having public hearings and approval of the PAC, the "current edition" of the AMA Guidelines remains the Fifth Edition which was the last edition approved by the PAC as of 2009. The 6th Edition may certainly be effective, but only after compliance with the legislative enactment requiring a public hearing pursuant to 85A O.S. Supp. 2014 § 17. The Court's decision on the use of the Sixth Edition is premature. The Court should issue a show cause order for the Workers' Compensation Commission to show that the 6th Edition has properly been authorized for use pursuant to the mandatory legislation.
 

 Gurich, V.C.J., with whom Edmondson and Reif, JJ., join dissenting:
 

 ¶ 1 I respectfully dissent. Although it is true that the use of the AMA Guides in evaluating permanent partial disability has been part of the statutory law of workers' compensation since 1977, there is a
 
 paradigm shift
 
 in the approach taken by the Sixth Edition.
 
 [1]
 
 The new model focuses on enablement rather than disablement. In other words, the Sixth Edition measures what an injured person can still do, not what the injured person has lost. In contrast, the AWCA is based purely on disability, specifically focusing on what has been lost due to injury or disease. For example, § 2(34) states: "Permanent partial disability means a permanent disability or
 
 loss of use
 
 after maximum medical improvement has been reached which prevents the injured employee, who has been released to return to work by the treating physician, from returning to his or her pre-injury or equivalent job. All evaluations of permanent partial disability must be supported by objective findings." 85A O.S. Supp. 2013 § 2(34) (emphasis added). Section 30 defines a physically impaired
 
 *1141
 
 person as one who has suffered the
 
 loss of
 
 the sight of one eye,
 
 loss by
 
 amputation or
 
 loss of use
 
 or partial loss of use. 85A O.S. Supp. 2013 § 30 (emphasis added). Section 46, which awards permanent partial disability to scheduled members, states that "[a]n injured employee who is entitled to receive permanent partial disability compensation under Section 45 of this act shall receive compensation for each part of the body in accordance with the number of weeks for the scheduled
 
 loss
 
 set forth below. 85A O.S. Supp. 2013 § 46(A) (emphasis added);
 
 see
 

 also
 
 85A O.S. Supp. 2013 § 46(C) ("The permanent partial disability rate of compensation for amputation or permanent total
 
 loss of use
 
 of a scheduled member specified in this section shall be seventy percent (70%) of the employee's average weekly wage....") (emphasis added).
 

 ¶ 2 In both the AWCA and the Sixth Edition, impairment and disability are distinct terms. The AWCA defines permanent disability as the extent, expressed as a percentage of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence.
 
 [2]
 
 The AWCA does not even include a definition of impairment. In the Sixth Edition, disability is defined as activity limitations and/or participation restrictions in an individual with a health condition, disorder or disease. The Sixth Edition provides that "in disability evaluations, the impairment rating is one of several determinants of disablement. Impairment rating is the determinant most amenable to physician assessment; it must be further integrated with contextual information typically provided by non-physician sources regarding psychological, social, vocation and avocational issues."
 
 [3]
 
 The Sixth Edition defines impairment as a significant deviation, loss or loss of use of any body structure or body function in an individual with a health condition, disorder or disease. The Sixth Edition bases an impairment rating on a measurement of activities of daily living. The Sixth Edition does not allow a physician to rate disability and specifically provides that "[t]he Guides are not intended to be used for direct estimates of work participation restrictions. Impairment percentages derived according to the Guides criteria do not directly measure work participation restrictions."
 
 [4]
 
 Finally, the Sixth Edition states: "the relationship between impairment and disability remains both complex and difficult, if not impossible to predict.
 

 ¶ 3 The Sixth Edition is diagnosis and classification based. There is no consideration given to whether or not someone has surgery as a result of the injury or whether the surgery was successful.
 
 [5]
 
 Yet in 85A O.S. Supp. 2013 § 54 an injured person is penalized for not having surgery.
 
 [6]
 
 The Sixth Edition also purports to limit an impairment evaluation to licensed physicians, and chiropractic doctors are limited to rating the spine only. Ratings by treating physicians are discouraged as they are not independent and subject to greater scrutiny.
 
 [7]
 
 The Sixth Edition also prejudges the record by making prejudicial statements that patients reporting pain and limitations may contribute to an inconsistent examination and are prone to symptom magnification.
 
 [8]
 
 On the other hand, the AWCA is an administrative system which assigns decision making authority to ALJ's based upon the evidence submitted, and does
 
 *1142
 
 not limit expert medical testimony.
 
 [9]
 
 Another example of vastly different meanings between the Sixth Edition and the AWCA concerns permanent total disability. An injured worker in Oklahoma may seek an award for permanent total disability based upon evidence of functional loss combined with age and other factors resulting in the inability to work. While the claim is pending, the injured worker can engage in vocational rehabilitation.
 
 [10]
 
 Contrast that with the rating system used in the Sixth Edition which is based on a maximum impairment rating of 100% and is described as "approaching death."
 
 [11]
 

 ¶ 4 Additionally, in my view, it is questionable as to whether the Sixth Edition has even been adopted by the Commission for use by physicians rating permanent partial disability. The Physician Advisory Committee, comprised of experts in the field, refused to adopt the Sixth Edition in 2009.
 
 [12]
 
 The only indication of the "adoption" of the Sixth Edition comes from a Notice Regarding Evaluation of Permanent Impairment issued on April 16, 2014, by the Executive Director of the Workers' Compensation Commission. This Notice stated that for all compensable claims occurring after February 1, 2014, physicians evaluating permanent impairment shall use the Sixth Edition of the AMA Guides, citing 85A O.S. Supp. 2013 § 45(C)(3). We have previously commented that "[n]either the Commission rules nor title 85A give the Executive Director the authority to issue such notices, and only the appellate courts of this State have the authority to render a binding interpretation of a state statute. The issuance of this Notice lacked any semblance of the procedural due process protections required by Art. 2 § 7 of the Oklahoma Constitution and such action was clearly in excess of the Commission's jurisdiction."
 
 Maxwell
 
 ,
 
 2016 OK 41
 
 , n.46,
 
 369 P.3d at
 
 1093 n.46. Since February 1, 2014, the Physicians Advisory Committee has not scheduled a public hearing on the AMA Guides and there is no recorded change in the position taken by the Physician Advisory Committee in 2009. But that is not surprising since Section 17, enacted in 2013, specifically "grandfathers in" any member serving on the effective date of this section and allows that member to serve the remainder of their term.
 
 [13]
 

 ¶ 5 There is also another major issue created by the use of the Sixth Edition for compensable claims after February 1, 2014. Since at least 1990, the applicable edition of the AMA Guides was based on the date of injury.
 
 [14]
 
 In fact, this Court has consistently applied the date of injury to arrive at all applicable workers' compensation benefits.
 
 [15]
 
 Even the AWCA 85A O.S. Supp. 2013 § 3 follows the long standing precedent that the date of injury controls the applicability of benefits:
 

 A. Every employer and every employee, unless otherwise specifically provided in this act, shall be subject and bound to the provisions of the Administrative Workers' Compensation Act. However, nothing in this act shall be construed to conflict with any valid Act of Congress governing the liability of employers for injuries received by their employees.
 

 B. This act shall apply only to claims for injuries and death based on accidents
 
 *1143
 
 which occur on or after the effective date of this act.
 

 C. The Workers' Compensation Code in effect before the effective date of this act shall govern all rights in respect to claims for injuries and death based on accidents occurring before the effective date of this act.
 

 ¶ 6 If a compensable injury or illness occurred prior to February 1, 2014, the Fifth Edition of the AMA Guides is applicable to rate permanent partial disability even though the AMA Sixth Edition was published in 2008. This is true because the AMA Sixth Edition was never adopted by the Workers' Compensation Court after recommendation by the Physician Advisory Committee and a public hearing. The Court of Existing Claims continues to follow
 
 85 O.S. 2011
 
 § 333, which requires ratings be based on the Fifth Edition of the AMA Guides. The monetary award in the case under review would be vastly different if the Fifth Edition was applicable.
 
 [16]
 
 Any edition of the AMA Guides must be subject to public hearing and review by a group of medical experts before it becomes effective. To do otherwise, may result in an arbitrary outcome.
 
 [17]
 

 ¶ 7 Further, although I agree with the majority that the Legislature has the authority to limit certain types of evidence admissible by the parties in civil proceedings,
 
 [18]
 
 § 2(41) of Title 85A also emphasizes that evidence admissible under the AWCA must be scientifically based. The Sixth Edition readily admits it is based on "consensus" not on science. In fact, there have never been any scientific studies to validate the use of the AMA Guides.
 
 [19]
 
 In addition, since 2005, the workers' compensation statutes have referenced Rule 702 of the Federal Rules of Evidence.
 
 [20]
 
 This Court has never addressed whether a conflict exists between the use of the AMA Guides and FRE 702 because there was never a direct challenge to the use of Editions 1 through 5 of the AMA Guides.
 
 [21]
 
 But in my view, by the terms of FRE 702 it is impossible for any physician to rely on the Sixth Edition of the AMA Guides. Admissible evidence must meet the test of reliability set forth in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc
 
 .,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993).
 

 ¶ 8 I do not advocate abandoning all guidelines. I just ask that we not put our heads in the sand and disregard the clear evidence developed in this case. This Court has struggled for years with challenge after challenge to make sense of the AWCA. I have been reluctant to engage in a discussion of the Grand Bargain in previous decisions. However, the limitations in the AWCA placed on injured workers have been numerous, and at times, onerous.
 
 [22]
 
 The strength of the system is based on the adjudicators and the physicians who are experts, and well versed in the field of disability medicine and law. The system is out of balance, and makes robots out of the very highly qualified individuals who have been charged with the responsibility of administering the system.
 

 ¶ 9 The AMA Guides should be relegated to a "guide" and nothing more. The Physician
 
 *1144
 
 Advisory Committee is in the best position to reconsider whether the Sixth Edition should be adopted.
 
 [23]
 
 To the extent the Sixth Edition is inconsistent with the AWCA, it should be disregarded. And even if the Sixth Edition is presumptively reliable under the majority's theory, then any other evidence which meets the FRE 702 standard should also be admissible, including other editions of the AMA Guides. For the reasons set forth above, I would reverse the award in this case and remand it to the Commission for reconsideration based on all of the competent evidence.
 

 [1]
 

 Hill cites the following definitions:
 

 "Impairment" is a significant deviation, or loss of use of any body structure or body function in an individual with a health condition, disorder, or disease.
 

 "Disability" has been defined as activity limitations and/or participation restrictions in an individual with a health condition, disorder, or disease.
 

 AMA Guides, Sixth Edition, Second Printing (2011), 1.3d Operational Definitions: Impairment, Disability, Handicap. Exhibit 21, p. 23.
 

 [2]
 

 Title 85A O.S. Supp. 2013 § 2(35) provides:
 

 "Permanent total disability" means, based on objective findings, incapacity, based upon accidental injury or occupational disease, to earn wages in any employment for which the employee may become physically suited and reasonably fitted by education, training, experience or vocational rehabilitation provided under this act. Loss of both hands, both feet, both legs, or both eyes, or any two thereof, shall constitute permanent total disability;
 

 Title 85 O.S. Supp. 2010 § 3(20),
 
 repealed by
 
 Laws 2011, SB 878, c. 318, § 87, provided:
 

 "Permanent total disability" means incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee may become physically suited and reasonably fitted by education, training or experience, including vocational rehabilitation; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall constitute permanent total disability
 

 [3]
 

 Hill also cites
 
 Brown v. W.T. Martin Plumbing & Heating, Inc.
 
 ,
 
 2013 VT 38
 
 ,
 
 194 Vt. 12
 
 ,
 
 72 A.3d 346
 
 . However, that cause concerned the propriety of using the AMA Guides as the only method for diagnosis and determination of a compensable injury. The
 
 Brown
 
 court saw no issue with the mandatory use of the AMA Guides for determining the existence of impairment, but determined nowhere did the relevant statutes state that the AMA Guides were to provide the exclusive mechanism for determining the existence of, or diagnosis associated with, a compensable injury.
 
 Brown
 
 ,
 
 2013 VT 38
 
 at ¶ 21-22,
 
 194 Vt. 12
 
 ,
 
 72 A.3d 346
 
 . The diagnosis and existence of a compensable injury is not at issue in this cause.
 

 [4]
 

 The challenged provisions of the AWCA all require use of the "current" or "most current" edition of the AMA Guides. Title 85A O.S. Supp. 2014 § 2(31)(a)(2)(b) provides:
 

 For the purpose of making permanent disability ratings to the spine, physicians shall use criteria established by the
 
 most current edition
 
 of the American Medical Association "Guides to the Evaluation of Permanent Impairment". (Emphasis added).
 

 Title 85A O.S. Supp. 2014 § 2(33) defines "permanent disability" as:
 

 [T]he extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the
 
 current edition
 
 of the American Medical Association guides to the evaluation of impairment, if the impairment is contained therein; (emphasis added).
 

 Title 85A O.S. Supp. 2013 § 45(C) provides in pertinent part:
 

 A physician's opinion of the nature and extent of permanent partial disability to parts of the body other than scheduled members must be based solely on criteria established by the
 
 current edition
 
 of the American Medical Association's "Guides to the Evaluation of Permanent Impairment". (Emphasis added).
 

 [5]
 

 Okla Const. art. 2, § 7 provides:
 

 No person shall be deprived of life, liberty, or property, without due process of law.
 

 [6]
 

 U.S. Const. amend. XIV, § 1 provides in pertinent part:
 

 No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
 

 [7]
 

 The Court has long held to this doctrine, and in
 
 Edmondson
 
 we noted:
 

 "The Legislature is primarily the judge of whether facts and conditions exist that make it advisable that any certain business be regulated for the public good, under the police power, and as to what means are best adapted to regulate it, and every possible presumption is to be indulged in favor of the correctness of such finding, and though the courts may hold views inconsistent with the wisdom of such legislation, they may not annul it as being in violation of substantive due process unless it is clearly irrelevant to the policy the Legislature may adopt or is arbitrary, unreasonable or discriminatory."
 

 2004 OK 23
 
 at ¶ 35,
 
 91 P.3d 605
 
 (quoting
 
 Jack Lincoln Shops, Inc. v. State Dry Cleaners' Board
 
 ,
 
 1943 OK 28
 
 , ¶ 0,
 
 192 Okla. 251
 
 ,
 
 135 P.2d 332
 
 (syllabus) ).
 

 [8]
 

 This Court has previously explained that the grand bargain:
 

 [C]onsisted of an injured worker relinquishing a common-law right to bring an action in a District Court against the worker's employer and the worker gained statutory compensation in a lessor amount. On the other hand, the employer relinquished certain common-law defenses in a District Court action and gained an economic liability that was both less in individual cases and fixed by statute.
 

 Torres
 
 ,
 
 2016 OK 20
 
 at ¶ 49,
 
 373 P.3d 1057
 
 .
 

 [9]
 

 Hill cites the following provisions in support of his argument concerning fault: 85A O.S. § 2(9)(b)(4) (creating a rebuttable presumption injury is not compensable if an employee tests positive for certain substances after injury); 85A O.S. § 2(30) (defining misconduct); 85A O.S. § 57 (terminating benefits for missing scheduled appointments (held unconstitutional in
 
 Gibby v. Hobby Lobby Stores, Inc.
 
 ,
 
 2017 OK 78
 
 ,
 
 404 P.3d 44
 
 ) ); 85A O.S. § 48 (doubling benefits to injured minors but not if they misrepresent their age); and 85A O.S. § 50(H)(12) (shifting cost of missed appointments to employees without a good-faith reason for absence).
 

 [10]
 

 A party who challenges the constitutionality of a statute must have a legally cognizable interest which is threatened by the application of that statute.
 
 Torres
 
 ,
 
 2016 OK 20
 
 at n.18,
 
 373 P.3d 1057
 
 ;
 
 Herring v. State ex rel. Oklahoma Tax Commission
 
 ,
 
 1995 OK 28
 
 , ¶ 8,
 
 894 P.2d 1074
 
 . Hill has demonstrated no such interest with regard to the provisions of the AWCA he cites as violations of the grand bargain.
 

 [1]
 

 We take judicial notice of statutory enactments.
 
 Huber v. Culp
 
 ,
 
 1915 OK 366
 
 ,
 
 46 Okla. 570
 
 ,
 
 149 P. 216
 
 . Title
 
 12 O.S. 1991
 
 § 2201 provides in pertinent part:
 

 "A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States...."
 

 [2]
 

 Page 163 of the record includes an affidavit from William R. Gillock, the Independent Medical Examiner under the Administrative Workers' Compensation Commission. It includes the minutes from the Physician Advisory Committee held on Friday, January 9, 2009.
 

 [1]
 

 The Sixth Edition adopts the terminology and conceptual framework of disablement as put forward by the International Classification of Functioning, Disability and Health by the World Health Organization. Record at 21.
 

 [2]
 

 Maxwell v. Sprint PCS
 
 ,
 
 2016 OK 41
 
 , ¶¶ 12-14,
 
 369 P.3d 1079
 
 , 1088-89. Disability is defined as the incapacity because of compensable injury to earn, in the same or any other employment, substantially the same amount of wages the employee was receiving at the time of the compensable injury. 85A O.S.Supp. 2013 § 2(16), (34).
 

 [3]
 

 Record at 24.
 

 [4]
 

 Id.
 

 [5]
 

 Record at 41-42; 168.
 

 [6]
 

 Except in cases of hernia, which are specifically covered by Section 61 of this act, where an injured employee unreasonably refuses to submit to a surgical operation which has been advised by at least two qualified physicians and where the recommended operation does not involve unreasonable risk of life or additional serious physical impairment, the Commission shall take the refusal into consideration when determining compensation for permanent partial or permanent total disability.
 

 [7]
 

 Record at 26; 29.
 

 [8]
 

 Record at 30; 167.
 

 [9]
 

 85A O.S. Supp. 2013 § 45(C)(1). "Any claim by an employee for compensation for permanent partial disability must be supported by competent medical testimony of a medical doctor, osteopathic physician, or chiropractor ..."
 

 [10]
 

 85A O.S. Supp. 2013 § 2(35) ; § 45(E)(8).
 

 [11]
 

 Record at 25.
 

 [12]
 

 Record at 162-166. The Physicians Advisory Committee was statutorily created in 1993, 85 O.S. Supp. 1993 § 201.1. There are apparently two versions of the Physician Advisory Committee currently in effect as 85 O.S. Supp. 2005 § 373 was first repealed on May 6, 2013, and then later amended on May 13, 2013. There is no subsequent legislation repealing this section. The other version is found at 85A O.S. Supp. 2013 § 17.
 

 [13]
 

 85A O.S. § 17(A)(3).
 

 [14]
 

 Rules of the Workers' Compensation Court, Rule 21(D), 85 O.S. Supp. 1990, Ch.4, App.;
 
 see also
 
 In Re: The Court Rules of the Workers' Compensation Court,
 
 2006 OK 6
 
 ,
 
 133 P.3d 886
 
 , Rule 21 (B)-(F), (I).
 

 [15]
 

 Williams Cos. Inc., v. Dunkelgod
 
 ,
 
 2012 OK 96
 
 ,
 
 295 P.3d 1107
 
 .
 

 [16]
 

 The 7% permanent partial disability rating awarded by the ALJ for the Petitioner under the Sixth Edition is equal to an award of $7,913.50; the Petitioner's medical expert opined that his permanent partial disability was rated at 31.8% using the Fifth Edition, which, is valued at $35,949.00.
 

 [17]
 

 In
 
 Rivas v. Parkland Manor
 
 ,
 
 2000 OK 68
 
 ,
 
 12 P.3d 452
 
 , while this Court found no equal protection violation, the AMA Guides were not at issue. The majority in Rivas interpreted a 1995 statute which limited recovery so that the sum of all PPD awards for each individual claimant could not exceed 100%. There was a rational basis for setting a life time limit on PPD benefits and it applied equally to all claimants. This statute did not arbitrarily fix a date when disability benefits were drastically reduced.
 

 [18]
 

 Lee v. Bueno
 
 ,
 
 2016 OK 97
 
 ,
 
 381 P.3d 736
 
 .
 

 [19]
 

 Record at 158.
 

 [20]
 

 85 O.S. Supp. 2005 § 3 ; 85 O.S. Supp. 2010 § 3 ; 85 O.S. § 2011 § 308.
 

 [21]
 

 Branstetter v. TRW/Reda Pump
 
 ,
 
 1991 OK 38
 
 ,
 
 809 P.2d 1305
 
 (Opala, J. concurring in result ¶ 2).
 

 [22]
 

 See
 

 Maxwell
 
 ,
 
 2016 OK 41
 
 ,
 
 369 P.3d 1079
 
 ;
 
 Torres v. Seaboard Foods, LLC
 
 ,
 
 2016 OK 20
 
 ,
 
 373 P.3d 1057
 
 ;
 
 Vasquez v. Dillard's, Inc.
 
 ,
 
 2016 OK 89
 
 ,
 
 381 P.3d 768
 
 ;
 
 Strickland v. Stephens Production Company
 
 ,
 
 2018 OK 6
 
 ,
 
 411 P.3d 369
 
 ;
 
 Gibby v. Hobby Lobby,
 

 2017 OK 78
 
 ,
 
 404 P.3d 44
 
 .
 

 [23]
 

 The Physician Advisory Committee has specific authority to develop an alternative method of evaluation as set forth in 85A O.S. Supp. 2013 § 60, which is similar to prior statutory versions, including 85 O.S. § 3(11) ;
 
 85 O.S. 2001
 
 § 3(14) ; 85 O.S. Supp. 2003 § 3(16).